JOURNAL ENTRY and OPINION
Appellant, Betty Davis, appeals from the Cuyahoga County Court of Common Pleas', Juvenile Division, award of permanent custody of her granddaughter, Raiven Davis, to the Cuyahoga County Department of Children and Family Services (agency). For the reasons adduced below, we affirm the decision of the trial court.
Raiven Davis was removed from the custody of her natural birth mother in June of 1995 due to neglect and substance abuse problems with the mother. Legal custody was granted to the child's maternal grandmother, appellant, Betty Davis, in July of 1995.
On July, 26, 1998, appellant entrusted Raiven Davis, now three and one-half years old, to her eldest daughter, Benita Davis. Appellant had left Raiven Davis with Benita Davis in order to attend a wedding. Benita Davis left Raiven Davis and six other children in her care that night home alone so that she could go to a bar.
Appellant arrived at Benita Davis' home at approximately 1:00 a.m. to find no adults present and the home locked. Appellant gained entry into the home by climbing through an open window. During this process, appellant lost a lit cigarette which eventually caught the curtains in the bedroom on fire. The children suffered smoke inhalation for which they were treated at the hospital.
Appellant admitted to drinking both beer and whiskey at the wedding. She does not recall how much she had to drink nor does she know how long the children were home alone since she failed to call from the wedding to check on them.
As a result of this incident, emergency custody was granted to the agency exparte. A case plan was developed with the objective of reunification. The appellant was referred to Recovery Resources for drug and alcohol assessment where she was diagnosed as alcohol dependent and recommended for outpatient treatment.
Appellant repeatedly missed her treatment sessions and offered excuses such as inclement weather and car problems as her reasons for missing scheduled appointments. The location was changed and bus passes were even provided to appellant to make the treatment more convenient. Appellant still failed to attend regularly. The caseworker made numerous attempts to get appellant involved. The attempts were futile and appellant was discharged without being credited for successful completion of the program as is required in the case plan. Appellant continues to make excuses for her poor attendance which even taken as true are unpersuasive.
The transcript of the underlying proceedings reveals that appellant and her immediate family are quite dysfunctional. The other six children left alone in Benita Davis' home are now involved with the agency. Numerous relatives, recommended by appellant as candidates for legal custody, had histories of criminal activity and child molestation. Appellant testified that she recommended these relatives to secure additional welfare benefits for the family. She further admitted that such recommendations placed Raiven Davis at risk as did her behavior the night of the wedding.
Appellant also admitted to leaving the child unattended with its natural mother knowing the mother continues to struggle with her crack addiction. Most telling though is the fact that appellant missed her reunification visit with her alcohol counselor, her caseworker and Raiven Davis. In fact, after Raiven was removed from appellant's care, she continued her drinking habits and failed to maintain contact with the child. Further, the record reveals that the natural parents are not viable options for custody since the father is unknown and the mother has been arrested repeatedly for her substance abuse problems and has failed to participate in any kind of plan formulated by the agency. The mother only argues that appellant should receive custody, not herself.
Incorporating testimony from previous hearings, the court heard additional testimony at the dispositional hearing and ruled that the agency should receive permanent custody. This appeal now follows. The sole assignment of error is stated as follows:
 THE JUVENILE COURT ABUSED ITS DISCRETION IN DETERMINING CLEAR AND CONVINCING EVIDENCE SUPPORTED ITS DECISION TO AWARD PERMANENT CUSTODY TO THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES.
The standard of review employed by this court in determining whether the trial court erred in its decision to award permanent custody to a child services agency is well established in Ohio.
While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9,13.
In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945), 146 Ohio St. 93; Trickey, supra. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
A child need not be placed in risk of immediate and unavoidable harm before a court can determine that such environment is unhealthy or unsafe; i.e., not in their best interest. In re Bishop(1987),36 Ohio App.3d 123; In re Massengill (1991), 76 Ohio App.3d 220,225-226.
The R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. In re Harding (Jan. 14, 1993), Cuyahoga App. No. 63520, unreported; In Re Hiatt (1993), 86 Ohio App.3d 716. "Clear and convincing evidence" is defined as that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id., citing Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122. An appellate court in reviewing awards of permanent custody of children to public children services agencies will affirm judgments supported by some competent, credible evidence. Id., citing Jones v. Lucas Cty. Children Serv. Bd. (1988), 46 Ohio App.3d 85,86.
R.C. 2151.414 (now revised as [2151.41.4]) governs permanent custody upon motion by a public children services agency and establishes numerous factors in a variety of subsections that courts must consider in making its determination in such matters. For example, R.C. 2151.414 (B),(D) and (E) all set forth different factors courts must consider and state in pertinent part, as follows:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
 (D) In determining the best interest of a child at a hearing pursuant to division (A) of this section * * * the court shall consider all relevant factors, including but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 Further, permanent custody should only be granted where one or
more of the twelve (now sixteen) enumerated factors of R.C. 2151.414(E) [2151.41.4(E)] exist:
 (E) * * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents.
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future; * * *.
 (3) The parent committed any abuse as described in section 2151.031 * * * caused the child to suffer any neglect * * *.
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so * * *. * * *
 (12) Any other factor the court considers relevant.
While the different subsections of R.C. 2151.414 establish factors that mostly concern the conduct of the parent and/or the interrelationship between the parent and child, this court finds no reason why such standards should not be applied or at least considered to situations where the juvenile courts are determining the permanent custody of a child in the care of a legal guardian. This is not to say that a legal guardian should be afforded the same latitude and presumptive rights that a natural parent receives as a matter of law. Whether the juvenile court applies the above enumerated factors to the care giver as a legal custodian or parent is irrelevant, what is in the best interest of the child is always of paramount concern and should be the overriding theme in any custody hearing.
This concept was made abundantly clear in the Ninth District Court of Appeals decision In re Patterson (1999), 134 Ohio App.3d 119, where the court stated:
 The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. In the matter of Mastin (Dec. 17, 1997), Lorain App. Nos. 97CA006743 and 97CA006746, unreported, at 7. In a permanent custody hearing, the court has the discretion to award legal custody to either parent or any other person who files a motion requesting legal custody. See Section 2151.353(A)(3) of the Ohio Revised Code. Further, this Court has held that Section 2151.353 does not require the juvenile court to consider placement with a relative before granting permanent custody. In re Dye, 1995 Ohio App. LEXIS 1630, *7 (Apr. 19, 1995), Summit App. Nos. 16927 and 16932, unreported. The juvenile court, therefore, was not required to find by clear and convincing evidence that Ms. Parsons was an unsuitable placement option.
Id. at 129-130.
Termination of parental rights is an alternative of last resort; however, it is sanctioned when necessary for the welfare of a child. I n re Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a proper moving agency, it must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. See In re William S. (1996), 75 Ohio St.3d 95,99; see, also, Section 2151.41.4(B)(1) of the Ohio Revised Code.
It is important to note, however, that each and every condition of Section 2151.414(E) does not have to exist before a court may terminate parental rights. In re Beverly (Mar. 31, 1994), Ross App. No. 93 CA 1992, unreported, citing In re Butcher (Apr. 10, 1991), Athens App. No. 1470, unreported. Rather, the court may make its decision based on the existence of only one of the factors. Id.
Accordingly, the trial court's decision in the instant case was not arbitrary, unreasonable or capricious. All efforts at rehabilitating or developing adequate parenting skills for the appellant had failed. The evidence developed in the hearings of this matter before the juvenile judge clearly shows that the judge properly considered the relevant statutory factors and, most importantly, considered the best interest of the child above all else. The evidence undoubtedly proves that Raiven Davis was being neglected by appellant. More concerning is that on two occasions appellant's actions placed the child at risk. The fire incident and the recommendation that Raiven Davis be placed with certain abusive relatives were two instances where appellant herself admitted that her behavior placed the child at risk.
The record below further demonstrates that Raiven Davis' behavioral problems abated while in the care of a foster home. The guardian ad litem assigned to represent the best interest of the child recommended permanent custody to the agency. It should also be noted that Raiven Davis had been put in the emergency custody of the agency twice in her short life.
Therefore, the trial court's granting of the motion for permanent custody to the agency based on the appellant's past actions and failure to comply with the agency's case plan was supported by clear and convincing evidence. Likewise, based on the evidence before the juvenile court and the record now before this court, we find by clear and convincing evidence that any number of the enumerated factors allowing permanent custody to the agency was prevalent here.
The assignment of error is hereby overruled and the decision of the court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ MICHAEL J. CORRIGAN JUDGE
TERRENCE O'DONNELL, P.J., and PATRICIA A. BLACKMON, J., CONCUR.