JOURNAL ENTRY and OPINION
Kimberly Gomez, appellant, appeals from the Cuyahoga County Court of Common Pleas, Juvenile Division, Case No. 9793816-18, in which the court granted permanent custody of her children to the Cuyahoga County Department of Children and Family Services (CFS). Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the lower court.
On December 1, 1997, a complaint for temporary custody was filed against the appellant and her husband, Mr. Shane Cruz, alleging that their children, Delia, Brianna and Shane, were neglected. On December 3, 1997, the three children were ordered removed from their parents' home and placed in the pre-adjudicatory temporary custody of CFS. Thereafter, at a magistrate's hearing on February 26, 1998, the parties stipulated to an amended complaint, neglect was found, and the children were committed to the agency's temporary custody. At the dispositional hearing, the CFS called five witnesses, while the appellant called four. The appellant's husband, who represented himself, called no witnesses. After hearing all testimony, and reviewing all evidence, the lower court issued an order committing all three children to permanent state custody.
This case arises out of a November 21, 1997 incident in which the police were called to a Brook Park motel to investigate a complaint that the appellant's children were running loose in the halls of the motel.[1]
Upon arrival, the police discovered that the children were unsupervised because the appellant's husband had fallen asleep. The appellant apparently had left the children with her husband to attend a therapy session, but conflicting testimony revealed that the appellant may have attempted a suicide and was at the hospital as a result. Thereafter, CFS intervened and removed the children from the motel and placed them in foster care.[2]
On December 10, 1997, Debra Bradesca, a CFS caseworker, was assigned this case. At trial, Bradesca testified about the objectives of the case plan presented to the appellant and her husband. The primary objectives of the case plan were as follows:
 (1) parent education; (2) diagnostic evaluation; (3) counseling; (4) stable housing; (5) alcohol and drug assessment along with any recommended treatment; (6) substitute care environment for the children; and (7) domestic violence counseling education. In addition to the case plan, the appellant was referred to a victim-witness program which confirmed that she was a victim of domestic violence.
At trial, testimony was elicited from several witnesses in regard to each of the above objective areas concerning the appellant.
 Parenting/Domestic Violence Education
In February of 1998, the CFS referred the appellant to parenting classes at MetroHealth Medical Center. The class was a sixteen (16) week program designed to develop parenting skills and provide individualized instruction. At trial, Linda Freeman, a group leader with the MetroHealth parenting program, testified that the appellant was asked to leave the program because of poor attendance in May of 1998. In August of 1998, the appellant was readmitted to the program, but again was discharged because of inappropriate behavior and for coming to class in an inebriated state. Ms. Freeman testified that she is concerned about the appellant's ability to be a fit parent, due to her inability to complete the parenting courses, her behavior, and continued conflict with her husband. In regard to the parenting objective, Ms. Bradesca, the CFS caseworker, testified that the appellant did not demonstrate improved parenting skills because of her temper during the monthly visits with the children and continued behavior problems.
Although the appellant was discharged from the MetroHealth parenting program, she did contact the Women's Center of Greater Cleveland where she attended parenting and domestic violence classes. The six (6) week course at the Women's Center covered parenting skills and domestic violence issues. Carmen Valentine, the bilingual education coordinator at the Women's Center, testified that she was the appellant's parenting skills instructor and that the appellant earned a certificate of completion. Ms. Valentine's testimony revealed that the appellant was on time to the class which met for two hours, one day a week. Testimony further revealed that Ms. Valentine believed the appellant benefitted from the instruction by participating in discussions and completing weekly assignments. Although this was not the program that the appellant was referred due to CFS's belief that the appellant needed a more intensive program, it is worth noting that the CFS often refers clients to this program for parenting and domestic violence services.
 Diagnostic Evaluation/Counseling
Ms. Bradesca, the CFS caseworker, testified that she has observed the appellant's behavior on several occasions. An investigation revealed that the appellant had a bipolar and borderline personality disorder. Ms. Bradesca testified that at times the appellant would appear giddy and very friendly and other times she would be unruly and mean. Ms. Bradesca testified that on several occasions the appellant threatened her with physical harm. Additionally, Ms. Bradesca testified that permanent custody was in the best interests of the children because their parents could not meet their special needs.
Dr. Nancy Huntsman, a psychologist with the Juvenile Court Diagnostic Clinic, testified that the appellant suffered from borderline personality disorder and a symptom of her disorder is a history of acting out with pare-suicidal gestures. A para-suicidal gesture is when the patient knowingly uses less than a lethal dosage of med[3] include highly variable mood swings and severication in an at relationship problems. In Dr. Huntsman's opinion, the chaotic childhood and domestic violence also contributed to her personality disorder. Further, Dr. Huntsman testified that borderline personality order is difficult to treat because the patient usually ends treatment early and does not comply with their prescription drug regimen. The appellant's inability to form a professional relationship with her doctor assures the likelihood of unsuccessful treatment.[4] Dr. Huntsman testified that those with this diagnosis tend to be inconsistent in their demands and consequences, and unsuccessful in obtaining services. As a result, Dr. Huntsman did not believe that the appellant would endure long-term counseling to help with her affliction.
Lastly, Dr. Huntsman testified that the placement of the children would place them at risk for physical abuse in an environment permeated by domestic violence. In her recommendation of permanent custody, Dr. Huntsman noted the appellant's resistance to effective treatment and change and that the best interests of the children would be served if permanently removed from these parents, although the parents should have an ongoing relationship with the children.[5] Although she did not feel that the appellant was at an extreme risk to cause physical harm for her to improve her behavior, she should be treated with psychotic medication with regular follow-up, combined with weekly therapy. Further, Dr. Huntsman admitted that her concern about domestic violence would diminish if the parents were now separated.
Joanna Gioia, a foster care worker from Boy's Village Treatment Foster Care agency, attends to medical needs, coordinates services with the agency caseworkers and monitors the children in their foster home. Ms. Gioia testified that all three children were diagnosed with Attention Deficit Hyperactivity Disorder and each was prescribed Ritalin. Ms. Gioia testified that during supervised visits with the parents, the children were aggressive and that their negative behaviors increased after visitations. Trial testimony revealed that the primary issues for the children are adjustment, attachment/separation, and consistency, and that all three children could adjust to an adoptive home. Further, since Ms. Gioia did not work with the parents directly, she could not clinically recommend reunification. Lastly, the guardian ad litem report recommended that permanent custody be granted.
 Stable Housing
In October of 1998, the appellant moved into a new apartment in Berea. Greg Cunningham, a social worker from the Cuyahoga County Public Defender's Office, testified that he visited the apartment and found it to be furnished with toys, clothing and furniture for each child. Testimony revealed that the appellant and her mother lived in the apartment and all of the rent/utilities were up-to-date. Further, although the appellant requested a visitation, Ms. Bradesca of CFS refused to visit the new residence of the appellant until further progress was made on other case plan objectives. As such, the CFS has no basis to comment on the appellant's compliance with this portion of the case plan.
 Alcohol and Drug Assessment
The appellant was subjected to two separate alcohol assessments. The first took place in February of 1998 and the second in March of 1998. Each assessment recommended that the appellant seek treatment for alcohol addiction. In February of 1998, the appellant was discharged from Recovery Resources for poor attendance, but readmitted in August of 1998. Suzanna Hahn, a counselor at Recovery Resources, testified that the appellant submitted to a urine screening which was negative. During the appellant's assessment, Ms. Hahn believed that the appellant was too hostile to accurately complete the assessment because she answered questions impatiently and was uncooperative during the interview. The appellant did not name her medications or complete the questions on medicine compliance, but at the assessment the appellant did admit that she had been diagnosed with bipolar disorder and sometimes took her medication, but did not currently. Ms. Hahn testified that the assessment was inconclusive due to lack of cooperation on the part of the appellant.
 Substitute Care/Special Needs
The children have been in the same foster home since July of 1998. Ms. Bradesca, of CFS, testified that the foster home was a loving structured environment and that she had observed the children in the home and at school. Although the maternal grandmother, Lillian Johnson, expressed an interest in caring for the children, CFS determined that her home was not suitable due to her history of mental health problems.
As previously stated, Joanna Gioia, a foster care therapist at the Boy's Village Treatment Foster Care, treated the children. Ms. Gioia testified that Brianna suffered from an adjustment and separation anxiety disorder. Brianna had an overwhelming fear of being left alone and often screamed when a care giver would leave. Additionally, she is diagnosed with neglect of child based on gorging and hoarding of food and constant hunger; problems with primary support group; and discord with children.
Delia suffers from stranger-anxiety which is a failure to exhibit a natural apprehension of people she did not know, even after being sexually abused by a male relative. Delia's Individualized Service Plan Update indicates diagnosis of post-traumatic stress disorder; neglect of child; and adjustment disorder. The appellant's mother testified that they had noticed Delia's inability to focus and were planning on seeking counseling for her.
Dr. Pallotta at MetroHealth Medical Center diagnosed Shane with a disruptive disorder and determined that he suffered from separation anxiety disorder and neglect. Shane cannot walk well due to problems with balance and a neurological exam is planned. In an effort to control Shane's behavior, Dr. Palotta placed him on a medication regimen of Ritalin and Clonidine. Additionally, Ms. Gioia testified that Shane exhibited aggressive behavior, such as biting and slapping other children.[6]
 Visitation
Supervised visitation with the children took place at the Metzenbaum Center in Cleveland. Although the visitation schedule called for one visit, for two hours each month at the Metzenbaum Center, the appellant's attendance was inconsistent. Ms. Bradesca, of the CFS, testified that she attended a visit in March of 1999 with the parents, grandmother, and social worker Greg Cunningham present. Ms. Bradesca stated that the appellant was agitated, anxious, and left about twenty minutes early from the visit. During the visit, the appellant appeared to be unable to control the children without help.
The foster care therapist, Ms. Gioia, testified that the appellant had to cancel several visits which could have been rescheduled. She also testified that the negative behaviors of the children increased after the visits, although the problem may not be the parents' fault, but, rather, issues associated with their ages and diagnoses. At one particular visit, Ms. Gioia testified that the parents spent much of the time arguing with the caseworker about the case plan, while the children aggressively sought out attention. Ms. Gioia concluded that the parents were not a unified team and in need of parenting classes.
Greg Cunningham, a social worker with the Public Defenders Office, also observed a visit at the Metzenbaum Center and he concluded that the interactions were appropriate. Mr. Cunningham believed that the parents interacted well with the children and that the children appeared happy to see all their parents. Mr. Cunningham testified that the children were active and excited, but, when needed, the parents disciplined them appropriately with time-outs.
After hearing all testimony and reviewing the evidence, the lower court issued an order committing all three children to permanent state custody. It is from this order that the appellant now appeals.[7]
The appellant assigns four errors for this court's review.
The appellant's first assignment of error states:
 I. BY ACCEPTING ADMISSIONS FROM KIMBERLY GOMEZ WITHOUT COMPLYING WITH JUVENILE RULE 29(D), THE COURT VIOLATED HER DUE PROCESS RIGHTS AND HER ESSENTIAL, BASIC RIGHT TO RAISE HER CHILDREN.
The appellant in her first assignment of error argues that she was denied due process when the trial court failed to question her as to the voluntariness of her admissions of neglect. Juv.R. 29(D) governs adjudicatory hearing and provides,
(D) Initial procedure upon entry of an admission
The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.
On February 26, 1998, the appellant appeared before the juvenile court magistrate and admitted to the allegations in the amended complaint that the children were adjudged neglected and committed to the temporary custody of CFS. This decision was journalized on March 13, 1998. According to Juv.R. 40(E)(3)(a), a party must within fourteen (14) days after filing of the magistrate's decision, file any objections to that decision. Additionally, appellant on the record agreed that temporary custody should be granted to the CFS. According to App.R. 4, the appellant has thirty (30) days to appeal the decision granting temporary custody to the CFS. The appellant failed to appeal in either instance and, therefore, the appellant has waived any right to appeal that the court erred in not advising appellant of her rights before she admitted allegations in the amended complaint for temporary custody.
Accordingly, the appellant's first assignment of error is not well taken.
Having a common basis in law and fact, this court will address the appellant's second and third assignments of error simultaneously. The appellant's second and third assignments of error state:
 II. THE COURT DENIED MS. GOMEZ' DUE PROCESS RIGHTS AND HER ESSENTIAL BASIC RIGHT TO RAISE HER CHILDREN BY FINDING THAT THEY CANNOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME AND SHOULD NOT BE PLACED WITH EITHER PARENT WHEN THAT FINDING WAS NOT SUPPORTED BY CREDIBLE EVIDENCE.
 III. THE COURT DENIED MS. GOMEZ' DUE PROCESS RIGHTS AND HER ESSENTIAL, BASIC RIGHT TO RAISE HER CHILDREN BY FINDING THAT A GRANT OF PERMANENT CUSTODY IS IN THE BEST INTEREST OF THE CHILDREN * * * WHEN NO CREDIBLE EVIDENCE SUPPORTED THAT FINDING.
In the appellant's second and third assignments of error, the appellant contends that there was not sufficient evidence to support awarding permanent custody to the CFS. This court has set forth the standard of review for permanent custody determinations in two recent cases. While the trial court must have based its decision on clear and convincing evidence, that standard of review of the appellate court is one of abuse of discretion. The findings the trial court is required to make in determining permanent custody were enumerated in the matter of In re Glenn (Oct. 19, 2000), Cuyahoga App. Nos. 76481, 76492, unreported, where this court stated:
 In order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Patterson, 134 Ohio App.3d 119, 730 N.E.2d 439 (1999), citing In re William S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738.
The standard of review employed by the court in determining whether the trial court erred in its decision to award permanent custody to a child services agency is clearly and accurately delineated in the matter of In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124, unreported:
 While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846.
 The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
 In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945), 146 Ohio St. 93, 64 N.E.2d 246; Trickey, supra. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 A child need not be placed in risk of immediate and unavoidable harm before a court can determine that such environment is unhealthy or unsafe; i.e., not in their best interest. In re Bishop (1987), 36 Ohio App.3d 123, 521 N.E.2d 838; In re Massengill (1991), 76 Ohio App.3d 220, 225-226, 601 N.E.2d 206.
 The R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. In re Harding, 1993 Ohio App. LEXIS 84 (Jan. 14, 1993), Cuyahoga App. No. 63520, unreported; In Re Hiatt (1993), 86 Ohio App.3d 716, 621 N.E.2d 1222. "Clear and convincing evidence" is defined as that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id., citing Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. An appellate court in reviewing awards of permanent custody of children to public children services agencies will affirm judgments supported by some competent, credible evidence. Id., citing Jones v. Lucas Cty. Children Serv. Bd. (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471.
As stated, in order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that:
 (1) the grant of permanent custody to the agency is in the best interest of the child; and
 (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Patterson, supra.
The court's finding that the best interest of the child is best served by granting permanent custody to the CFS was based on clear and convincing evidence and complied with the mandates of R.C. 2151.414(D) and (E). In determining the best interest of a child during the permanent custody hearing, the court must consider the four factors in R.C.2151.414(D). These factors are (1) the interaction of the child with the parent, siblings and foster parents; (2) the wishes of the child; (3) the custodial history of the child; and (4) the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody.
In the case at hand, the appellant's interaction with the children often resulted in negative behavior in the children. Testimony revealed that during visitation the children became unruly and reverted to negative behaviors in an attempt to get the appellant's attention. Additionally, during visitation, the appellant could not handle the children or follow through with designed discipline procedures.
Second, it is noted that the children expressed a desire to return to their parents, but this court must take into account the age of the children and their inability to understand the nature of the proceedings. Additionally, testimony revealed that the children suffer from various mental disorders which could possibly affect their ability to understand the nature of the proceedings.
Third, the children have been out of the care of the appellant for more than eighteen months, during which time the children have received consistent medical treatment for their physical and mental problems. Moreover, the record reflects that the children have begun to make great strides in their treatment.
Last, the record reflects that the children are in need of medical attention. Each child suffers from ADHD in addition to other ailments unique to each child. As previously stated, Brianna suffers from an adjustment and separation anxiety disorder which causes an overwhelming fear of being left alone. Additionally, she is diagnosed with neglect of child based on gorging and hoarding of food and constant hunger; problems with primary support group; and discord with children. Delia suffers from stranger-anxiety which is a failure to exhibit a natural apprehension of people she does not know, even after being sexually abused by a male relative. Delia's Individualized Service Plan Update indicates diagnosis of post-traumatic stress disorder; neglect of child; and adjustment disorder. The youngest, Shane, is diagnosed with a disruptive disorder and suffers from separation anxiety disorder and neglect. Shane cannot walk well due to problems with balance, and a neurological exam is planned.
The court's finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent was based on clear and convincing evidence. R.C. 2151.414(E) states:
 In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
The factors applicable to the case at hand are as follows:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantiallyremedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (15) The parent has committed abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
(16) Any other factor the court considers relevant.
The record supports the trial court's finding that the parents have failed to continuously and repeatedly to remedy the conditions causing the child to be placed in the custody of the CFS. First, CFS developed a case plan with the goal of reunification of the appellant with her children. The case plan contained referrals to attend parenting, domestic violence and anger management classes, in addition to participating in alcohol and drug treatments. Although the appellant was referred to each of these services, she has failed to adequately complete any of the case plan objectives. This court notes that the appellant sought treatment on her own for parenting and domestic violence and that the CFS refers clients to the service which the appellant participated in, but the appellant's case plan contained a referral for the sixteen week program available at MetroHealth which the appellant was dismissed from for varying reasons. Granted the appellant earned a certificate of completion for a similar six week course, but the evidence reflects that the program with MetroHealth was more intensive and better suited to address the needs of the appellant. Debra Bradesca, the CFS social worker, testified that although the appellant completed the shorter course, her parenting skills had not improved as evidenced by her and her children's behavior during visitations.
Second, the record reflects that the appellant demonstrated a lack of commitment toward the children by failing to regularly visit. The appellant's initial case plan set visitation on a weekly basis, but it was eventually changed to once a month for two hours per visit. Although not clear, the record reflects that out of nineteen (19) scheduled visits, the appellant missed approximately seven (7) or eight (8). The reasons for missing the scheduled visits ranged from illness to being out of town. In addition to missed visits, testimony revealed that the appellant often brought inappropriate visitors to her scheduled visitation sessions which detracted from the bonding between the appellant and children.
Third, the record reflects that each child suffers from special emotional and psychological needs which the appellant cannot address. The testimony of several witnesses noted that the children were in need of constant supervision and consistent therapy in order to address their needs and that foster care provided an environment where the children could receive the specialized help they needed.
Fourth, the appellant suffered from a bipolar and borderline personality disorder. The appellant's disease is long term and requires consistent medical treatment and therapy. However, successful treatment is difficult due to the patient's inability to consistently maintain treatment. A successful treatment program would call for taking prescribed anti-psychotic medication in combination with long-term therapy. Although, the appellant admits to suffering from this condition, the appellant readily admits that she does not follow through with her medications and does not continue with therapy. As a result, the appellant's behavior is erratic and sometimes threatening. Testimony revealed that the appellant has threatened a social worker, failed to complete a drug assessment, and possibly attempted suicide due to her inability to maintain a consistent treatment pattern.
In reviewing the record, it is clear that the trial court did not err in granting permanent custody to the CFS. There is clear and convincing evidence in the record to prove that placement with the CFS was in the best interest of the children. This court concedes that permanent custody is an extreme measure, but the evidence is clear that the appellant does not possess the necessary resources to adequately provide for the well-being of her children. This court duly notes that the appellant sought treatment on her own for parenting and domestic violence education and obtained adequate housing, but that does not negate the fact that the appellant did not adequately follow through with her case plan designed at reunification with her children. There was substantial testimony in regard to the appellant's inability to maintain therapy aimed at addressing her mental disorders. A review of the record reflects that many of the instances addressing the appellant's behavior are directly related to the appellant's mental disorder and failure to seek regular therapy. Accordingly, the trial court was within its discretion in determining that the children would obtain a greater benefit from permanent custody.
Likewise, this court is troubled with the CFS callous behavior when dealing with the appellant. In reviewing the record, the CFS and related staff were confrontational and antagonistic in dealing with the appellant and her substantial needs. The mission of the appellant's case plan was to reunify the family, but the actions of the CFS reflect a less than stellar performance in pursuit of that goal. The record is replete with instances of the appellant attempting to conform to the case plan, but the evidence is minimal as to aid CFS provided in reaching the goals enumerated. The CFS obligation does not end with the design of a case plan, but rather it is the beginning of an ongoing relationship geared at reunifying the family.
Therefore, notwithstanding the shortcomings on the part of the CFS, there is clear and convincing evidence to justify the grant of permanent custody. The appellant suffers from emotional and mental disorders which greatly affect her ability to provide an adequate living environment for her children. Further, the children suffer from behavioral and mental afflictions which require consistent medical attention and therapy which the appellant cannot reasonably provide in light of her own inability to seek medical attention.
Accordingly, the appellant's second and third assignments of error are not well taken.
The appellant's fourth assignment of error states:
 IV. THE COURT'S FAILURE TO GIVE DEFENSE COUNSEL ACCESS TO THE GUARDIAN AD LITEM'S REPORT PRIOR TO THE HEARING PREJUDICED MS. GOMEZ' DEFENSE AND VIOLATED HER CONSTITUTIONAL RIGHT OF DUE PROCESS.
In appellant's fourth assignment of error, the appellant argues that the trial court committed reversible error because appellant's trial counsel was not given a copy of the guardian ad litem report until after the hearing. In the report, the guardian ad litem recommended a grant of permanent custody to the CFS and appellant's counsel made a request to make comments or rebut the guardian ad litem's recommendation which the trial court stated could be made in a post hearing brief.
This court in the matter of In re Hauserman (Feb. 3, 2000), Cuyahoga App. No. 75831, unreported, stated that the doctrine of harmless error applies in cases were the guardian ad litem failed to submit a report prior to hearing. A review of the record reflects that substantial clear and convincing evidence existed justifying the grant of permanent custody. The appellant has failed to demonstrate prejudice as a result of receiving a copy of the guardian ad litem report at the conclusion of the trial. Moreover, the trial court granted the appellant's counsel's request to rebut or comment on the guardian ad litem's report which counsel was free to do. There is simply no evidence of prejudice and, as such, the appellant's argument is harmless at best.
Accordingly, the appellant's fourth assignment of error is not well taken.
It is ordered that appellee recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Juvenile Court Division to carry this judgment into execution.
 ______________________________ MICHAEL J. CORRIGAN, JUDGE
LEO M. SPELLACY, P.J., and JAMES D. SWEENEY, J., CONCUR.
[1] The appellant, her husband, and appellant's mother were living at the motel.
[2] From December 18, 1997 to July 28, 1998, the children were placed with their aunt, Maria Cruz, but were removed when sexual abuse allegations were made against Maria Cruz's son, Pado Cruz.
[3] Testimony revealed that the appellant attempted suicide by ingesting three Xanax, considerably less than a lethal dosage.
[4] Testimony at trial revealed that the appellant has consistently failed to adhere to her prescription medicine and therapy plan.
[5] In the matter of In re Coyne (Apr. 29, 1999), Cuyahoga App. Nos. 73798, 73799, unreported, this court reviewed and affirmed the trial court's decision to deny permanent custody where the psychologist gave similar testimony, however, Coyne may be distinguished because the children were disabled and in long term foster care (available where the children need residential treatment) and the granting or denial of permanent custody would not change the residence of the children.
[6] Many of the disorders the children suffer from are genetically related and not a result of their living environment. attention. Ms. Gioia concluded that the parents were not a unified team and in need of parenting classes.
[7] The appellant is separated from the children's father and does not appeal on his behalf.