**In re MASSENGILL.**

[Cite as *In re Massengill* (1991), 76 Ohio App.3d 220.]

Court of Appeals of Ohio,
of Lucas County.

No. L–91–009.

Decided Nov. 15, 1991.

*Bonnie Porz,* for appellant.

*Lou Ann Frey,* for appellee.

SHERCK, Judge.

This is an appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, awarding permanent custody of appellant Donna Massengill's two children to appellee, Lucas County Children Services Board

("LCCSB"). Because we find that appellee was authorized to seek permanent custody of the children, that there was no error in failing to join *sua sponte* the paternal grandparents, and that the judgment of the trial court was supported by the manifest weight of the evidence, we affirm the judgment of the trial court.

This case finds its origins with the birth of Latasha Massengill to appellant in June 1989. Latasha was born with cocaine in her system. Latasha's mother, appellant Donna Massengill, was unable to care for the infant. Also, she could not give appellee the name of anyone else who could or would properly care for the baby. Appellee filed a complaint alleging that Latasha was dependent or neglected. Appellant appeared, stipulated to the underlying facts and consented to a finding by the court that Latasha was a neglected and dependent child. The trial court awarded temporary custody of Latasha to appellee. Appellee placed physical custody of Latasha with the paternal grandparents of Latasha's two-year-old brother, Derrick. Both Latasha and Derrick resided with Derrick's paternal grandparents, hereinafter referred to as "the Cokers."

As with Latasha, appellant had been unable to care for two-year-old Derrick. Appellant on her own initiative placed Derrick with the Cokers. Appellant visited Derrick and the Cokers on occasion, but primarily to take care of her own needs. In July 1989, shortly after the birth of Latasha, appellant removed Derrick from the Cokers' home and placed him with the child's maternal grandmother, Mrs. Stevenson. In the summer of 1990, Mrs. Stevenson announced that she would no longer be able to care for Derrick. Appellee responded with a petition for shelter care for Derrick. Appellee ultimately sought permanent custody of both children.

While her children were placed as described above, appellant apparently continued to live her drug-oriented life. After appellee gained temporary custody of Latasha, appellant entered into a drug rehabilitation program. However, she was expelled after a few days. Appellant later completed a two-day detoxification program, but failed to obtain the necessary long-term care for her addiction. Appellant's contact with her children and with appellee became sporadic. When a bed at another treatment facility became available, appellee was unable to locate appellant to notify her.

In June 1990, both children were placed by appellee with the Cokers as Mrs. Stevenson could not continue to care for the children. The case plan provided for unlimited visitation with the children while at the Cokers, but from June to August, appellant visited only twice.

The following chronology reflects the legal filings of the case. In June 1989, appellee sought and was granted emergency shelter care of Latasha. In

September 1989, appellee sought and gained temporary custody of Latasha. In June 1990, appellee sought and was awarded shelter care for Derrick. In August 1990, appellee filed a motion for permanent custody of Latasha. Appellee also filed an amended complaint seeking permanent custody of Derrick. The two actions were consolidated and set for trial. Despite proper service, appellant failed to appear at the hearing held September 11, 1990. After hearing testimony, the referee determined that Derrick was a dependent child. By agreement with appellant's counsel, the court then heard testimony regarding the appropriate disposition. Appellee was awarded permanent custody of both children. This appeal followed.

Appellant assigns the following three errors:

"1. Lucas County Children Services Board erred in filing its motion for permanent custody.

"2. The Cokers should have been made parties to permanent custody proceeding.

"3. The lower court failed to show by clear and convincing evidence that Latasha and Derrick were without parental care."

I

In her first assignment of error, appellant contends that appellee was not authorized to seek permanent custody of the children. R.C. 2151.413(A) provides:

"(A) A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to the effective date of this amendment, is granted temporary custody of a child who is not abandoned or orphaned or of an abandoned child whose parents have been located may file a motion in the court that made the disposition of the child requesting permanent custody of the child if a period of at least six months has elapsed since the order of temporary custody was issued or the initial filing of the case plan with the court if the child is an abandoned child whose parents have been located."

By the plain terms of the statute, appellee was authorized to seek permanent custody if the children were orphaned or abandoned *or* if the agency had temporary custody for six months prior to seeking permanent custody. Appellee had temporary custody of Latasha for more than six months prior to moving for permanent custody. Therefore, as to Latasha, the first assignment of error is not well taken.

As to Derrick, appellee first filed its complaint seeking only emergency shelter care on June 18, 1990. Temporary custody "pending adjudica-

tion" was awarded to appellee the next day. The court ordered placement in shelter care. On August 7, 1990, less than two months later, appellee filed its amended complaint seeking permanent custody of Derrick. Thus, appellee did not have temporary custody of Derrick for six months prior to seeking permanent custody. However, R.C. 2151.413 does not provide the only method of obtaining permanent custody. R.C. 2151.35 [1] also allows the court to grant the agency permanent custody on the initial complaint of the agency. It is only where the court first awards temporary custody to the agency that the agency must wait the six months required by R.C. 2151.413 in order to seek to convert the temporary custody to permanent custody. Furthermore, this court has previously held that an award of temporary custody for shelter care "pending adjudication" is not such an award of temporary custody as to trigger the provisions of R.C. 2151.413. *In re Peterson* (Mar. 23, 1990), Lucas App. No. L–89–193, 1990 WL 31759. See, also, *In re Covert* (1984), 17 Ohio App.3d 122, 17 OBR 185, 477 N.E.2d 678. Therefore, a complaint seeking shelter care pending adjudication allows the agency to subsequently file an amended complaint seeking permanent custody and the amended complaint will relate back as though the agency had initially sought permanent custody as allowed by R.C. 2151.35. Appellee's amended complaint was properly treated as an initial complaint. Therefore, appellee was not required to wait six months before seeking permanent custody. Accordingly, the first assignment of error is not well taken.

## II

In her second assignment of error, appellant argues that the trial court erred by failing to join *sua sponte* the Cokers as parties to the action.

---

1. The statutory scheme begins with R.C. 2151.27. R.C. 2151.27(C) allows a complainant to seek permanent custody in the first instance. The hearing on the complaint is governed by R.C. 2151.35. R.C. 2151.35 lacks the restrictions of R.C. 2151.413. Instead, R.C. 2151.35 provides:

"(A) * * * If the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, the court shall proceed * * * to hold a dispositional hearing * * *.

" * * *

"[B](3) After the conclusion of the dispositional hearing, the court shall enter an appropriate judgment * * *. The court may make any order of disposition that is set forth in section 2151.353 of the Revised Code."

R.C. 2151.353 provides:

"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may * * *:

" * * *

"(4) Commit the child to the permanent custody of a public children services agency * * * if the court determines * * * that the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent and determines * * * that the permanent commitment is in the best interest of the child. * * *"

However, appellant does not specify how she was prejudiced by the failure to make the Cokers a party to this action.

Joinder of grandparents is necessary only where the grandparents have obtained a legal right to custody or visitation. *In re Schmidt* (1986), 25 Ohio St.3d 331, 25 OBR 386, 496 N.E.2d 952. Where a grandparent's claimed right to visitation is based on an order of temporary custody allowing the grandparents visitation rights, the grandparents do not have a sufficient right to make joinder mandatory. *Id.* We hold that where the right to custody is likewise based on placement of the children in the home by the agency having temporary custody, then the grandparents lack a sufficient right to make joinder mandatory. The Cokers' right to custody was no different from that of any other foster parents with whom children are temporarily placed by an agency. Such foster parents need not be joined as parties. *In re Palmer* (Apr. 12, 1983), Stark App. No. CA–6026, unreported, 1983 WL 6408, affirmed (1984), 12 Ohio St.3d 194, 12 OBR 259, 465 N.E.2d 1312. If the grandparents themselves could not successfully assert the right to be joined as a party, then appellant cannot successfully complain that the court failed to join them *sua sponte.* Accordingly, appellant's second assignment of error is not well taken.

## III

In her third assignment of error, appellant contends that the common pleas court "failed to show by clear and convincing evidence that Latasha and Derrick were without parental care." We perceive this assignment to be an assertion that appellee presented insufficient evidence to support the determination that Derrick and Latasha were dependent or neglected.[2]

Once again, we must distinguish between Latasha and Derrick. As to Latasha, she was originally declared to be dependent and neglected in September 1989. Temporary custody was awarded to appellee at that time. The record before this court includes no transcript of the hearing in which Latasha was determined to be dependent and neglected. However, the referee's report recites that appellant consented to the finding and stipulated to the underlying facts.

---

2. By the plain wording of the assignment, appellant appears to assert that the court, rather than LCCSB, bore the burden of proof. If this is indeed appellant's assertion, we reject it. To the extent that this is an assertion that the trial court applied an improper standard of proof, we find that proposition unsupported by the record. If the assignment is an assertion that there was insufficient evidence to support the disposition, we find ample evidence that permanent custody was in the best interests of the children. We also find ample evidence of the factors described in R.C. 2151.414(E)(2) and 2151.414(E)(4).

■ The stipulated facts show that Latasha was born to appellant on June 28, 1989. The baby's urine tested positive for the presence of cocaine. Appellant had no permanent home. She had been using cocaine approximately five times daily for more than one and one-half years prior to Latasha's birth. Appellant had nowhere to place Latasha. In short, if appellee had not intervened, Latasha would have been placed in jeopardy. Latasha's prospective condition was such as would endanger her health. In the case of a newborn, a child may be declared dependent if her prospective condition or environment would be threatening to the health or well-being of the infant. *In re Campbell* (1983), 13 Ohio App.3d 34, 13 OBR 36, 468 N.E.2d 93. The state is not required to take the "long odds gamble" on the life of the child before intervening. *Id.* at 37, 13 OBR at 39, 468 N.E.2d at 97 (Jones, J., concurring). Accordingly, as to Latasha, appellant's third assignment of error is not well taken.

■ Derrick was determined to be dependent on December 6, 1990. The evidence concerning Derrick indicates that appellant was unable or unwilling to care for Derrick. Appellant first placed Derrick with the child's paternal grandparents, the Cokers. However, for unknown reasons, appellant removed Derrick from the Cokers' home in July 1989, and placed Derrick with his maternal grandmother, Mrs. Stevenson.

In June 1990, Mrs. Stevenson announced to a caseworker that she was unable or unwilling to continue to care for Derrick. It is clear from the evidence presented that appellant was not able to care for Derrick. As we indicated above, a newborn child's prospective condition justifies a finding of dependency. *In re Campbell, supra.* There is little rational distinction between a newborn child and a two-year-old child. If a child's imminent prospective condition would be threatening to his health or well-being, the child may be declared dependent. We think that it would have been imprudent to wait until Derrick was living without care or shelter before intervening.

There was sufficient evidence to warrant the trial court's finding that Derrick was a "dependent child" within the meaning of R.C. 2151.04. Appellant's third assignment of error, therefore, is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining. The judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER and MELVIN L. RESNICK, JJ., concur.