OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Huron County Court of Common Pleas, Juvenile Division. On February 11, 1999, the juvenile court awarded permanent custody of Stephanie H. to appellee, the Huron County Department of Human Services. Appellant Tracy H., the natural mother of Stephanie, appeals that judgment and sets forth the following assignments of error:
 "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE HURON COUNTY DEPARTMENT OF HUMAN SERVICES WHEN THE DEPARTMENT ADMITTEDLY DID NOT ATTEMPT TO REUNIFY THE CHILD WITH HER MOTHER AND WHERE THE CASE PLAN PREORDAINED A MOTION FOR PERMANENT CUSTODY.
 "II. THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY TO THE HURON COUNTY DEPARTMENT OF HUMAN SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The juvenile court conducted a hearing on appellee's motion for permanent custody on February 9, 1999 when Stephanie was eleven years old. Appellee first became involved with Stephanie in 1992, seven years earlier. At that time, a dependency case filed in Lorain County was transferred to Huron County.[1] That initial case ended when Stephanie was restored to her mother's custody in February 1993.
Two years later, appellee received a complaint that Tracy could not properly care for Stephanie. Stephanie behaved violently and had seizures. Appellant acknowledged that she could not care for Stephanie in her home at that time.[2] Appellant had younger children in the home who were not removed from her care.
As a result, appellee filed a complaint alleging Stephanie was a dependent child in February 1995, which was assigned Case No. 95-16235. Stephanie was placed in the temporary custody of her maternal aunt. The court ordered that, pursuant to a case plan for reunification, appellant would have supervised visits with Stephanie and that appellant would complete parenting classes and start mental health counseling. In February 1996, however, appellee requested an extension of the temporary custody order. Stephanie was placed in foster care at that time because her aunt had health difficulties. The court granted that motion and again ordered appellant to complete parenting classes and attend counseling.
In August 1996, custody of Stephanie was restored to her mother because Tracy had completed parenting classes and counseling. However, the court awarded protective supervision of Stephanie to appellee. The court ordered appellant to initiate additional counseling immediately.
Four months later, Stephanie was again placed in the home of her maternal aunt because appellant made no progress with a social services program. At that time, the court granted legal custody of Stephanie to her maternal aunt and the maternal aunt's husband and allowed appellant to have supervised visitation with Stephanie. The case was dismissed and appellee's interest in the case ended.
In August 1997, the maternal aunt asked that Stephanie be removed from her home because Stephanie had inappropriate sexual contact with the aunt's eighteen-month old daughter. On October 28, 1997, appellee filed a dependency complaint in the underlying case no. 97-18501. Appellee requested permanent custody of Stephanie. Alternatively, appellee requested that the court grant temporary or legal custody to a relative or interested party, or grant temporary custody or protective supervision to appellee. See R.C. 2151.353(B). Appellee included the phrase: "The department however, [sic] is seeking permanent custody of Stephanie from the onset of this case. Appellee alleged in the complaint:
 "Stephanie is a special needs child. She has severe behavior problems, her IQ is in the 50's and she additionally has a seizure disorder. Her condition requires a lot of supervision. Tracy [H.], Stephanie's mother is low functioning herself. All efforts to reunite Stephanie with her mother fell apart and her mother was not able to provide adequate monitoring of Stephanie, which led to putting Stephanie at risk."
The juvenile court awarded temporary custody of Stephanie to appellee after conducting a shelter care hearing on November 13, 1997. Stephanie was again placed in a foster home. An attorney was appointed to represent appellant.
When the adjudication hearing was conducted on December 3, 1997, appellant admitted the allegations of the complaint. The court adjudicated Stephanie to be dependent as alleged in the complaint. The court further found that appellee had made all reasonable efforts to prevent or eliminate the need for removal of the child from the home and reasonable efforts had been made to reunify the child with her family. See R.C. 2151.419(A).
At the disposition hearing on January 21, 1998, the court ordered Stephanie to remain in temporary custody and approved the case plan proposed by the agency, which was dated October 31, 1997. The goal of that case plan was to seek permanent custody of Stephanie and arrange adoption. No services were offered to appellant to allow reunification with Stephanie, although she was permitted to have supervised visitation "as arranged with social worker."
On March 24, 1998, the juvenile court granted appellee's request for a six-month extension of temporary custody. The extension allowed appellee to investigate whether Stephanie could be placed with her maternal grandmother.
On October 20, 1998, appellee filed a motion for permanent custody. The juvenile court conducted an "adjudicatory" hearing[3] on the motion for permanent custody on February 9, 1999. The court awarded permanent custody of Stephanie to appellee. It found that Stephanie had been in and out of her mother's custody with seven different placements since July 1992. The court also determined that appellant had visited her daughter only four times since she had been placed in foster care in December 1997. The trial court found that Tracy had not shown the capability to properly care for Stephanie since her placement in foster care in December 1997, and no relatives were willing to care for Stephanie. The juvenile court concluded:
 "Based upon clear and convincing evidence, Stephanie [H.] has not been able to be placed with either of her parents within a reasonable time and should not be placed with her parents.
 "2. Based upon clear and convincing evidence of the background and circumstances involving Stephanie [H.], it is in her best interest to place her in the permanent custody of the Huron County Department of Human Services."
In her first assignment of error, appellant contends that appellee should have provided her with a case plan[4] to allow her to complete services to regain custody of Stephanie. That proposition is not well-taken.
A public children services agency may request permanent custody of a child in one of two ways. First, the agency may request "original" permanent custody in an initial abuse, neglect, or dependency proceeding under R.C. 2151.353(A)(4). See In reMassengill (1991), 76 Ohio App.3d 220. Second, pursuant to R.C.2151.413(A), the agency may file a motion for permanent custody of a child who was previously adjudicated abused neglected, and/or dependent and who is in the agency's temporary custody or long-term foster care.
It appears that appellee originally intended to pursue "original permanent custody" under the first alternative in R.C.2151.353(A)(4). But, appellee actually proceeded under the second option, in R.C. 2151.414, after the court awarded appellee temporary custody of Stephanie on January 21, 1998. Under the first alternative in R.C. 2151.353, a public children service agency is not required to order a reunification plan when the court awarded permanent custody as part of an original complaintfor permanent custody. In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, paragraph two of the syllabus; see R.C. 2151.353(A) (4). Consequently, had appellee proceeded with its initial intent to seek "original" permanent custody of Stephanie, no case plan or reunification would have been required. See In the matter of:Shardi Parks (Aug. 24, 1990), Lucas App. No. L-89-122, unreported;In the Matter of: Dylan B. (Nov. 6, 1998), Lucas App. No. L-98-1018 (no need to implement a reunification plan in case brought as motion for permanent custody under R.C. 2151.353(A)(4) if futile); In the Matter of: Mark H. (Apr. 30, 1999), Lucas App. No. L-98-1238, unreported.
However, for reasons which are not clear in the record, appellee acquired temporary, not permanent, custody of Stephanie on January 21, 1998. As a result, to pursue its initial goal of securing permanent custody of Stephanie, appellee had to proceed under R.C. 2151.414 and file a motion for permanent custody. According to Baxter, supra, because appellee obtained temporary custody of Stephanie under R.C. 2151.353(A)(3), appellee was required to "submit an initial plan to reunite the family."
However, effective January 1, 1989, the language, which the Ohio Supreme Court construed in Baxter to require a reunification plan, was eliminated from the R.C. 2151.414
provisions concerning filing a motion to secure permanent custody of a child. As this court has observed:
 "The legislature has apparently supplanted the requirement of good faith in favor of the standard stated in R.C. 2151.414(E)(1). If applicable to a particular case, this provision refers to the `reasonable case planning and diligent efforts' in which the agency is to engage `to assist the parents to remedy the problems that initially caused the child to be placed outside the home.'"
In re Brittany and Marcus B. (Jan. 12, 1996), Wood App. No. WD-95-002, unreported.
However, it is unnecessary to determine whether appellee was required to prepare a case plan with a goal to reunite appellant and Stephanie after appellee obtained temporary custody of Stephanie No transcripts of the adjudication or disposition hearings were submitted on appeal. Consequently, we cannot determine whether appellant objected to the lack of a reunification goal in the case plan when the trial court approved it at the disposition hearing on January 21, 1998.
Additionally, pursuant to the language of R.C.2151.412(C), a case plan must be filed before the adjudication hearing, but no later than thirty days after the earlier of the date on which the complaint was filed or the child was first placed into shelter care. The record indicates that the case plan was not filed with the court within thirty after the shelter care hearing let alone before the adjudication haring on December 3, 1997. Nothing in the record suggests appellant objected to the untimely filing of the case plan.
Consequently, we decline to address, for the first time on appeal, appellant's first assignment of error where the record does not disclose that appellant raised the issue to the trial court. See In re M.D. (1988), 38 Ohio St.3d 149, 151-152; In reAwkal (1994), 95 Ohio App.3d 309, 319.
Accordingly, appellant's first assignment of error is not well-taken.
In her second assignment of error, appellant asserts that the trial court's findings of facts and conclusions of law are not supported by the manifest weight of the evidence. In particular, appellant challenges the trial court's conclusion that appellant had not "shown the capability to undertake proper care and custody of" Stephanie.
In order to grant an agency's motion for permanent custody, a juvenile court must consider the child's status under R.C. 2151.414(B) and determine whether: 1) the child cannot or should not be placed with one of his parents within a reasonable time pursuant to R.C. 2151.414(E); and 2) permanent custody is in the best interests of the child. See In the Matter of Mark H.,supra. To determine that a child cannot or should not be placed with a parent, a juvenile court must conclude that clear and convincing evidence establishes one or more of the twelve predicate conditions listed in R.C. 2151.414(E). In the Matter ofAdam M. (Aug. 20, 1999), Lucas App. Nos. L-97-1207 L-98-1379, unreported, citing In re: William S. (1996), 75 Ohio St.3d 95, syllabus; In the matter of Jessica V. (Jan. 22, 1999), Lucas App. No. L-98-1016, unreported. If the court determines that one or more of the conditions listed in R.C. 2151.414(E) exists, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Id. Then, the court must determine whether terminating the parents' rights is in the child's best interest.
The juvenile court determined that Stephanie could not be placed with either of her parents and should not be placed with her parents. In support of its determination that Stephanie could not be placed with either parent, the trial court made the following findings of fact:
"1. * * * Stephanie * * * is a special needs child * * *.
"* * *
 "3. Stephanie * * * has been involved in the juvenile court system through dependency cases practically her entire life * * *.
 "4. Between 1992 and December 1996, Stephanie * * * was in and out of her mother's custody with both relative and foster care place placements * * * [because] her mother [was] unable to properly care for her.
 "5. [Since December 1997, appellant] has only visited her daughter four times.
"* * *
 "8. [Since December 1997, appellant] has not show the capability to undertake proper care and custody of Stephanie * * *."
The existence of the predicate condition in R.C.2151.414(E)(4) can be established in one of two ways. First, a court may conclude that the parent "has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so." Second, a court may conclude that the parent demonstrated a lack of commitment toward the child "by other actions showing an unwillingness to provide an adequate permanent home for the child."
Here, the record shows that appellee became involved with appellant's care of Stephanie as early as 1992. Although appellant cared for Stephanie for two years after custody was restored to her in 1993, appellant acknowledged she could no longer care for her daughter. From 1995 until 1997, Stephanie lived with her maternal aunt and with foster parents. Custody of Stephanie had been restored to appellant for less than four months in 1996 before Stephanie again resided with her maternal aunt and foster parents.
Based on these facts showing Stephanie resided with appellant for less than four months between 1993 and 1997, we conclude that clear and convincing evidence supported the juvenile court's determination that appellant had "demonstrated a lack of commitment toward the child by * * * actions showing an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414(E)(4)
Appellant also suggested that distance and transportation difficulties prevented her from visiting her daughter in foster care for more than four times in 1997. Thus, appellant also challenges whether clear and convincing evidence supported the court's determination that appellant had demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able
to do so, as set out in the first portion of R.C. 2151.414(E)(4). Although she lacked transportation to travel the long distance to the foster home, the record showed appellant demonstrated little interest in finding alternative ways to visit or communicate with Stephanie. The record revealed that appellant had been able to arrange visitation four times at appellee's location despite the allegedly "sterile" surroundings.
Clear and convincing evidence supports the predicate conclusion that appellant was unwilling to provide an adequate permanent home for Stephanie under the second half of R.C.2151.414(E)(4). Clear and convincing evidence establishes that appellant did not regularly support, visit, or communicate with the child when able to do so, under the first half of R.C.2151.414(E)(4).
We note, however, that the juvenile court's findings determined that appellant had been "unable to properly care for"
Stephanie between 1992 and December 1996. (Emphasis added). It also concluded that since Stephanie was placed in foster care in December 1997, appellant "has not shown the capability to undertake proper care and custody of Stephanie [H.]." (Emphasis added). However, 2151.414(E)(4) requires that a parent beunwilling, not unable, to provide an adequate home for the child.In re Shawnta J. (Mar. 31, 1998), Lucas App. No. L-97-1233, unreported. The juvenile court's unfortunate choice of the words "unable" and "incapable, in light of overwhelming evidence that appellant was unwilling to provide an adequate permanent home for Stephanie for so many years, must be corrected.
Consequently, while appellant's second assignment of error is found not well-taken, we remand this case to the juvenile court for the limited purpose of entering appropriate findings consistent with the language of R.C. 2151.414(E) and (E)(4)(4) and this opinion.
On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed, except that the case is remanded to the extent correct findings of facts must be entered in the record. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 Melvin L. Resnick, J. _______________________________ JUDGE Richard W. Knepper, J. _______________________________ JUDGE Mark L. Pietrykowski, J. _______________________________ JUDGE
CONCUR.
[1] Neither Stephanie's father, nor her father's family had any contact with her since that time.
[2] Stephanie was diagnosed as having moderately retarded intelligence in 1997.
[3] Juvenile Rule 34(I), effective in 1994, defines hearings to determine whether temporary custody orders should be modified to permanent custody orders are dispositional hearings which do not need to be bifurcated. In 1998, Juvenile Rule 2(B) was amended to eliminate the terminology that a hearing on a motion to determine "whether temporary legal custody should be converted to permanent custody" was adjudicatory.
[4] Public children services agencies must prepare and maintain a case plan for any child placed in the agency's temporary or permanent custody. R.C. 2151.412(A)(2). R.C.2151.412(F) states that goals for case plans for children in temporary must either: (1) eliminate the need for the out-of-home placement with due speed so that the child can return home; or, (2) if return to the child's home is not imminent and desirable, develop and implement an alternative permanent living arrangement for the child. R.C. 2151.412(F)(1)(b)(i) and (ii).
In addition, a public children services agency must consider six priorities to develop a case plan for a child in its temporary custody. R.C. 2151.412(G). One of those priorities is whether the child should be committed to its permanent custody if the child cannot be placed with either of the child's parents within a reasonable period of time and no suitable family member or nonrelative can accept legal custody of the child.