JOURNAL ENTRY AND OPINION
Appellant Marie Benavides appeals from the trial court's decision to grant permanent custody of her grandchildren to the Cuyahoga County Department of Family and Children's Services (CCDCFS). Yvette Benavides, the mother of the children, has not appealed the trial court's decision and thus, this opinion will not address any issues pertaining to her. The fathers of the children are either deceased or, after being duly served, failed to make any appearance in this case.
The record demonstrates that Yvette Benavides and her four children lived with her mother, the appellant. At some point, the children were removed from the custody of Yvette and placed with the appellant. On January 14, 1998, legal custody of Marisol, Javier, Summer and Gabrielle Benavides was granted to Mrs. Benavides. Subsequently, CCDCFS sought to remove the children from Mrs. Benavides and on April 17, 1998, CCDCFS filed a complaint for temporary custody of the children. The magistrate's order of June 15, 1998, as approved by the trial court, indicates that the parties agreed to the allegations in the complaint, as amended. The children were found to be neglected by clear and convincing evidence and removed from the home of Mrs. Benavides. Temporary custody was continued in March 1999. The motion to modify temporary custody to permanent custody was filed on October 13, 1999.
Attached to the motion for permanent custody is the affidavit of CCDCFS social worker David Merriman. He affirmed that the family has been involved with CCDCFS since 1992, and that Mrs. Benavides has failed to meet the children's basic needs, i.e., little food in the home, utilities repeatedly shut off, unsanitary conditions. The affidavit also states that Mrs. Benavides is unable to comprehend and meet the special needs of the children or to protect them from the risk of further abuse by their maternal uncle.
The CCDCFS case plan and its addendums are a part of the record on appeal. In the case plan, Mrs. Benavides was required to have her emotional needs assessed by a psychological evaluation. She was also required to demonstrate an increased ability to protect the children and to participate in counseling. The case plan demonstrates that Mrs. Benavides underwent the psychological evaluation, that she obtained stable housing, and that she attended parenting classes. However, the plan states that the objective that Mrs. Benavides' emotional needs be addressed and treated has not been completed.
The court heard evidence on March 24, 2000; April 6, 2000; and May 19, 2000. At trial, Yvette Benavides did not argue that she should retain her parental rights. Rather, she urged the court to place the children with her mother, the appellant. The focus of the trial became the ability of Mrs. Benavides to care for the children.
Sheila Pitts, the original social worker assigned to the family, testified that under the case plan, Mrs. Benavides was required to obtain suitable housing, participate in counseling, and attend parenting classes. These requirements were fulfilled; however, the appellant was also required to undergo psychological testing. The appellant was diagnosed with dependent personality disorder, anxiety disorder, hypochondria, and an inability to protect herself.
Ms. Pitts testified that the appellant was aware that her daughter was sexually abused by her father, Mrs. Benavides' husband. At the time the children were placed with the appellant, both Yvette, the children's mother, and Tito, a maternal uncle, lived in the appellant's home. There was testimony that Tito had abused one of the children. Although Ms. Pitts directed the appellant to have Yvette and Tito move out, the appellant stated that she was unable to do so. Ms. Pitts testified that the children have such extensive special needs that a healthy individual is required to care for them. The testimony was clear that there is no question that the appellant loves her grandchildren. The question is whether or not she can undertake parenting four children with special needs and whether or not she has the ability to protect the children. Ms. Pitts stated that she does not believe that the appellant understands the full scope of the children's problems.
The next social worker assigned to the family was Mr. David Merriman. He testified that the point of counseling for the appellant was so that she could meet her own needs and thus better meet the needs of the children. The appellant does not understand the severity of the children's sexual conduct. The appellant is not in a position now, or in the foreseeable future, to parent these children. Mr. Merriman testified that it is not in the best interests of the children to be returned to the appellant.
Mr. Merriman stated that prior to March 21, 2000, Tito lived next door to the appellant. As of March 30, 2000, the appellant stated to Mr. Merriman that Tito no longer lives there. Mr. Merriman testified that he had many conversations with the appellant regarding Tito and the inappropriateness of his contact with the children. The fact that Tito moved does not resolve the problem, because the appellant has asserted that she has an ongoing relationship with her son. Mr. Merriman stated that in addition to his abuse of one of the children, Tito has exposed the children to sexual material by watching pornography in their presence. The children have all expressed that they are terrified of Tito.
In his opinion, Mr. Merriman believes that the appellant is unable to keep the children safe. He also believes that the appellant is unable to cope with the children's special needs such as attention deficit disorder, learning disabilities and behavioral handicaps. Mr. Merriman also does not believe that the appellant is able to cope with the children's needs for counseling based on their past sexual and physical abuse.
At trial, State's Exhibit B was read into the record by Mr. Merriman. This exhibit, admitted into the record without objection, is a report from Dr. Rick Capasso, a forensic psychologist who performed the psychological evaluation of Mrs. Benavides. The MMPI-2 was administered by Dr. Capasso and his report states in pertinent part:
 Ms. Benavides is reporting clinically significant anxiety and depression. These are likely to be chronic and pervasive conditions for her; although, she may lack psychological insight into her problems. Most likely, her stress is manifest through classic psychosomatic symptoms. Verifiable medical trauma needs to be evaluated but in addition to diagnosable medical difficulties, Ms. Benavides is also likely to report more vague symptoms such as chronic generalized pain, head and stomach discomfort and overall lack of energy and concentration. Hysterical symptoms are possible and should be medically evaluated.
 Ms. Benavides will resist psychological interpretations of her physical symptoms. * * * Another approach would be to focus on her most important interpersonal relationships. Ms. Benavides is likely to be passive-dependent in these relationships and may place a premium on being overtly conforming and conventional at the cost of her own personal physical and mental health.
 Appropriate assertiveness skills would be an important facet of her overall psychotheropentic treatment.
* * *
Clinical Recommendation;
 Ms. Benavides is reporting numerous psychological and medical problems. They are severe to the point that she cannot benefit from traditional psychotherapy at this point and requires case management just to co-ordinate appropriate social services. * * * Based just on psychological data I feel she could qualify for SSI.
Subsequent to the trial, the guardian ad litem filed an extensive written report. The guardian recommended that the court grant permanent custody to CCDCFS. The report details more specifically the individual problems of the children. Marisol, age 10, has Attention Deficit Hyperactive Disorder, and attachment disorder. She is alleged to have been sexually abused by an adult male, and she has sexually acted out with siblings and other children. Her intelligence quotient has been measured at 75. Javier, age 9, has Hyperactive Disorder and attachment disorder, is learning disabled, and has sexually acted out with younger siblings. His intelligence quotient was measured at 70. Summer, age 6, is learning disabled, has mild retardation, has physical aggression problems, cuts things and objects, and has sexually acted out with siblings. Gabriella, age 5, sexually acts out with siblings and has manipulative behavior problems in the foster home and on the school bus. Her behavior problems have been deemed serious.
The guardian ad litem's report states that Mrs. Benavides has had a hard life. She has diabetes, depression and anxiety. She was allegedly badly mistreated and abused by her husband, deceased, who reportedly would lock her in a closet for days at a time. The children's mother was allegedly sexually abused by her father (Mrs. Benavides' deceased husband). This was known to Mrs. Benavides at the time. Mrs. Benavides has chronic financial problems which result in the utilities being periodically turned off. In one clinical assessment the doctor stated that she would not benefit from traditional psychotherapy due to the severity of her mental problems and that she would require a case manager.
As to the maternal uncle, Tito, the guardian ad litem states that one of the children, Javier, stated that he hit all of the children frequently, would chase them under tables, yell constantly, and drag them around the house. When he struck the children, he would use his hand, belt, shoe, hanger or curtain rod. Javier also stated that Mrs. Benavides was aware of these beatings and did nothing to intervene. Mrs. Benavides would allow Tito to be present in the home even after promising the social worker that he would not be present.
It is the discussion of the best interests of the children which is of greatest impact. The report states:
 This case presents us with four children who have experienced victimization, neglect, abuse and mistreatment by most of the adults in their lives. Their mother, a promiscuous drug addict gave birth to four children by four different men in less than six years.
 Their uncle, a loutish brute physically beat them and verbally abused them. Their grandmother, a physically and mentally frail woman neglected them and failed to protect them. The first social worker in this case bounced them from placement to placement, split them up, failed to provide them counseling and in so doing maked (sic) matters worse. Finally after over two years in temporary custody, we come to trial to decide whether to keep them languishing in, albeit more appropriate, but still non-permanent foster homes through permanent custody, or return them to a neglectful, abusive family.
 The choice must still be the lesser of two evils. It is in their best interests to be placed in the permanent custody of CCDCFS and at least given the chance at permanency and normal, appropriate adult love and guidance.
In its journal entry of April 17, 2000, the trial court noted that the appellee's exhibits A and B were admitted without objection and that appellant's exhibits A, B, and C were admitted without objection. On May 25, 2000, in the final entry the trial court found, by clear and convincing evidence, that permanent custody was in the best interests of the children. As to the appellant, the court specifically states that she has serious physical as well as mental health problems, which requires (sic) a great deal of attention. She had chronic financial problems and is unable to cope with the needs of the children. The court also stated that While Maria does love the children, she is unable to provide stable housing and meet the needs of the children and their removal from her control was necessary and with all of her problems [the appellant] cannot care for them in the foreseeable future.
The appellant asserts one assignment of error:
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY SINCE (1) NONE OF THE CIRCUMSTANCES SET FORTH IN R.C. 2151.414(E) WERE PROVEN BY CLEAR AND CONVINCING EVIDENCE AND (2) THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The appellant asserts that there was not sufficient competent credible evidence to support a firm conviction or belief that any of the statutory circumstances set forth in R.C. 2151.414(E) were proven. The appellant also asserts that the verdict is against the manifest weight of the evidence. The appellee responds by asserting that Mrs. Benavides is not a parent of the children and is not entitled to the statutory deference given to parents. CCDCFS argues that it was not required to prove by clear and convincing evidence that the children cannot or should not be placed with the appellant within a reasonable time when proceeding on a motion for permanent custody and that it is not required to demonstrate that any of the factors in R.C. 2151.414(E) are applicable to the appellant.
This court must agree with the appellee's assertions. In In re Patterson (1999), 134 Ohio App.3d 119, the appellate court held that the willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. The court has the discretion to award legal custody to either parent or any other person who files a motion requesting legal custody, see R.C. 2151.353(A)(3); however the statute does not require the juvenile court to consider placement with a relative before granting permanent custody. Patterson, supra. The Patterson Court concluded that a juvenile court is not required to find by clear and convincing evidence that a grandparent is an unsuitable placement option.
This appellate court, in In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124, unreported, stated that the standards set forth in R.C. 2151.414
may be applied or at least considered in situations where the juvenile courts are determining the permanent custody of a child in the care of a legal guardian. However, as this court held in In re Davis:
 This is not to say that a legal guardian should be afforded the same latitude and presumptive rights that a natural parent receives as a matter of law. Whether the juvenile court applies the above enumerated factors to the care giver as a legal custodian" or parent" is irrelevant, what is in the best interest of the child is always of paramount concern and should be the overriding theme in any custody hearing.
This court has also held that a child need not be placed in risk of immediate and unavoidable harm before a court can determine that such environment is unhealthy or unsafe, i.e., not in their best interest. In re Bishop (1987), 36 Ohio App.3d 123; In re Massengill (1991),76 Ohio App.3d 220, 225-226.
In reading these cases together, this court determines that the court should look to R.C. 2151.414(E) for guidance when considering a grandparents' desire to retain custody of grandchildren, but that the trial court is not required to make its determination based upon the standard of clear and convincing evidence.
The standard of review employed by this court in determining whether the trial court erred in its decision to award permanent custody to a child services agency is clearly and accurately delineated in Davis, supra:
 While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
 In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945), 146 Ohio St. 93, 64 N.E.2d 246; Trickey, supra.
 Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
In applying this standard to the case sub judice, this court finds that the trial court had competent, credible evidence that permanent custody of the children should be awarded to CCDCFS. The testimony at trial revealed that Mrs. Benavides has serious mental health issues which entitled the court to find that she is unable to provide an adequate permanent home for the children at the present time and in the foreseeable future. Such mental and physical health issues are factors for the court's consideration under R.C. 2151.414(E).
While this court acknowledges that Mrs. Benavides loves her grandchildren, and has sympathy with her desire to raise them, we are not able to say that the trial court abused its discretion in awarding CCDCFS permanent custody of the children.
The appellant's assignment is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________ SWEENEY, JAMES D., J.:
DIANE KARPINSKI, A.J., and ANNE L. KILBANE, J., CONCUR.