JOURNAL ENTRY AND OPINION
The appellants, Tracy and Allan Gump, appeal from the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, in which the lower court granted permanent custody of their children to the Cuyahoga County Department of Children and Family Services (CCDCFS). Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the lower court.
On April 19, 2001, CCDCFS filed a complaint for an adjudication of neglect with a prayer for permanent custody against the appellants alleging that their children, Wade and Michael, were neglected.[1] On April 23, 2001, the children were placed in the emergency temporary custody of CCDCFS. Thereafter, an adjudicatory hearing was conducted on July 25, 2001, at which time the parties entered admissions to the complaint, and the children were found to be neglected. On October 4, 2001, the dispositional hearing was conducted and testimony was taken concerning the well-being and condition of the children. On October 22, 2001, the lower court's entry was journalized and CCDCFS was granted permanent custody of the appellants' children.
Prior to the dispositional hearing, the appellants had a long and tumultuous history with CCDCFS. They first became involved with CCDCFS in August 1999 after an incident in which Allan Gump poured lighter fluid over Wade's hand and lit it on fire in an effort to teach him not to play with fire. As a result of Allan Gump's actions, Wade suffered severe injuries to his hand that required medical attention, which the appellants failed to seek for three days.
As a result of the injuries inflicted upon Wade, the appellants were formally charged by the authorities and incarcerated after pleading guilty to charges of child endangering. While the appellants were incarcerated, the children were in the custody of CCDCFS from August 1999 through September 2000.
In September 2000, the children were returned to the custody of Tracy Gump upon her release from prison and remained in her custody until January 2001 at which time a voluntary agreement for custody was taken and the children were again placed with the agency.[2] While the children were in the temporary custody of CCDCFS, the agency attempted to assist Tracy Gump in obtaining employment, adequate housing and various other resources necessary to enable her children to be returned to her care. During this time, Allan Gump was released from prison and Tracy Gump reconciled with him.
The appellants continued to reside with each other at the time of trial despite the concerns of CCDCFS for the safety of the children in light of the previous acts of violence by Allan Gump toward the children.
At the dispositional hearing, testimony was elicited from several witnesses including the CCDCFS social worker, Kirsten Dibbern, Dr. Ken Konieczny, a certified expert, Patrick Lavelle, the guardian ad litem, the children's school teacher and the appellants. In light of the testimony and evidence presented, the lower court terminated the parental rights of the appellants and granted permanent custody of the children to CCDCFS. It is from this order that the appellants now appeal.
The appellants present two assignments of error for this court's review. The first assignment of error states:
 I. The trial court abused its discretion when it granted the appellee's complaint for permanent custody because the appellee failed to provide clear and convincing evidence that permanent custody was in the best interest of the children as required by Ohio Revised Code 2151.414.[3]
In their first assignment of error, the appellants contend that there was not sufficient evidence to support awarding permanent custody to CCDCFS. This court has recently set forth the standard of review for permanent custody determinations in In re Glenn (Oct. 19, 2000), Cuyahoga App. Nos. 76481, 76492, and In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. While the trial court must have based its decision on clear and convincing evidence, the standard of the appellate court is one of an abuse of discretion. The trial court is required to make certain findings in determining permanent custody, as enumerated in the matter of In re Glenn, supra, where this court stated:
 In order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that: 1) the grant of permanent custody to the agency is in the best interest of the child; and 2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Patterson (1999), 134 Ohio App.3d 119, citing In re William S. (1996), 75 Ohio St.3d 95, 99.
The standard of review employed by the court in determining whether the trial court erred in its decision to award permanent custody to a child services agency is delineated in the matter of In re Davis, supra, which states:
 While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945), 146 Ohio St. 93, 64 N.E.2d 246; Trickey, supra. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
A child need not be placed in risk of immediate and unavoidable harm before a court can determine that such environment is unhealthy or unsafe; i.e., not in their best interest. In re Bishop(1987),36 Ohio App.3d 123, 521 N.E.2d 838; In re Massengale (1991),76 Ohio App.3d 220, 225-226, 601 N.E.2d 206.
The R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. In re Harding (Jan. 14, 1993), Cuyahoga App. No. 63520, 1993 Ohio App.; In Re Hiatt (1993), 86 Ohio App.3d 716,621 N.E.2d 1222. "Clear and convincing evidence" is defined as that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id., citing Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. An appellate court, in reviewing awards of permanent custody of children to public children services agencies, will affirm judgments supported by some competent, credible evidence. Id., citing Jones v. Lucas Cty. Children Serv. Bd. (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471.
R.C. 2151.414(B)(1) provides that a court may grant permanent custody of a child to, among others, a public services agency if the court determines, by clear and convincing evidence offered at the custody hearing, that it is in the best interest of the child and that any of the following apply: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents, R.C.2151.414(B)(1)(a); (2) the child is abandoned, R.C. 2151.414 (B)(1)(b); (3) the child is orphaned and has no relatives who are able to take permanent custody, R.C. 2151.414(B)(1)c); or (4) the child has been in the temporary custody of one or more public services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, R.C.2151.414(B)(1)(d).
The lower court's finding that the best interest of the child is best served by granting custody to CCDCFS was based on clear and convincing evidence and complied with the mandates of R.C. 2151.414(D) and (E). In determining the best interest of a child during the permanent custody hearing, the court must consider the five factors in R.C. 2151.414(D). These factors are 1) the interaction of the child with the parent, siblings and foster parents; 2) the wishes of the child; 3) the custodial history of the child; and 4) the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody.
Before issuing an order for permanent custody, the lower court was required to make a finding, pursuant to R.C. 2151.414(D), that permanent custody was in the children's best interest. The lower court made such a finding in its journal entry.
In reviewing the factors stated in R.C. 2151.414(D), the following facts and testimony highlight the grant of permanent custody to CCDCFS. First, R.C. 2151.414(D)(1) addresses the interaction of the child with the parent, siblings and foster parents. At the dispositional hearing, testimony revealed that the interaction of the children with both of the appellants appeared to be superficial. Moreover, appellant Allan Gump's visitation was terminated altogether due to the negative effect it had on the children. Further, testimony punctuated the fear that the children had of appellant Allan Gump because of his prior violent acts toward the children and the fact that appellant Tracy Gump had reconciled with Allan. Most telling was the negative impact that visitation had on the children's schooling and behavior which severely deteriorated as visitation increased.
Second, R.C. 2151.414(D)(2) addresses the wishes of the child in determining custody. Notably, conflicting evidence existed to indicate that the children expressed a desire to live with their maternal grandfather at one time, but testimony revealed that the grandparents did not have the resources to care for the children, and additional testimony showed the children's desire to remain with their foster mother. The children's guardian ad litem testified that the children desired to remain with their foster mother and did not desire to return to the care of their mother or father.
Third, R.C. 2151.414(D)(3) addresses the custodial history of the child. At the dispositional hearing, the lower court made specific findings that the children have been in the custody of CCDCFS for twelve or more months of a consecutive twenty-two-month period, pursuant to R.C. 2151.414(D)(3).
Fourth, R.C. 2151.414(D)(4) addresses the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody. In reviewing the record, it is clear that a legally secure placement cannot be achieved without a grant of permanent custody. Most damaging is the fact that appellant Tracy Gump reconciled and continued to live with appellant Allan Gump after his release from prison for the crime of child endangering. Additionally, the record reflects that appellant Tracy Gump failed repeatedly to provide for and maintain any semblance of a consistent home life for the children. In addition, R.C. 2151.414(E)(4) states:
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
The testimony and evidence presented at trial indicate the appellants repeatedly failed to provide an adequate home for the children. They often failed to provide the basic necessities for the children, the children were often dirty and unkempt, and the home lacked food and was often in disarray, according to testimony. These facts, coupled with appellant Tracy Gump's inability to seek or find employment, further exacerbated the poor home conditions which the children were forced to endure. Further, Dr. Konieczny, an expert witness, testified that after evaluating the information gathered during the course of his observations, it would not be in the best interest of the children to be reunified with the parents.
Fifth, R.C. 2151.414(D) addresses the factors listed in R.C.2151.414(E)(7) to (11) and whether they apply in relation to the parents and child. A review of those factors indicates that R.C. 2151.414(E)(7) is applicable to the instant matter.
R.C. 2151.414(E)(7) addresses a list of criminal offenses which are applicable to adjudication if either of the parents have been found guilty of or pled guilty to such offenses. In the instant matter, both parents pled guilty to child endangering, in violation of R.C. 2919.22, an offense addressed in R.C. 2151.414(E)(7). As stated, appellant Allan Gump poured lighter fluid over Wade's hand and set his hand on fire as a lesson/ punishment for playing with matches. Moreover, both Allan and Tracy Gump failed to seek medical attention for their son's severely burned hand.
Granted R.C. 2151.414 lists five separate and specific factors to be considered along with all other relevant factors. However, this court has held that [o]nly one of these factors needs to be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing In re Shaeffer Children (1993), 85 Ohio App.3d 683. In reviewing the factors listed in R.C. 2151.414, there exist several which are relevant to the instant matter. Testimony revealed that the children did not wish to return to their birth parents and wanted to remain with their foster mother. Additionally, the lower court stated that the children had been in the custody of CCDCFS for twelve or more months of a consecutive twenty-two-month period.
Last, in support of his argument, appellant Allan Gump contends that he made a good faith effort to complete the terms required by CCDCFS. As stated by CCDCFS in its brief, this argument is without merit as the lower court's determination was made pursuant to R.C. 2151.414. Under R.C. 2151.414(B)(1)(d), * * *, if a child has been in the custody of CCDCFS for no less than twelve of the last twenty-two months and it is determined by clear and convincing evidence that permanent placement with the agency is in the child's best interest under R.C. 2151.414(B)(1), a judge may properly award permanent custody to the agency under R.C.2151.414. It was not necessary to determine whether the child could or should be placed with a natural parent under R.C. 2151.414(E). In re E.M., et al. (Nov. 8, 2001), Cuyahoga App. No. 79249, at 28.
As the lower court made the requisite 12 months of a consecutive twenty-two-month period determination, the case plan efforts of appellant Allan Gump are wholly irrelevant in considering the assignment of error which challenges the lower court's best interest finding. The fact that the appellant attempted to complete his case plan is only relevant under one of the 16 factors to be considered under the separate subsections at R.C. 2515.414(E). It has no bearing on the lower court's determination in this case which was made pursuant to R.C. 2151.414(B)(1)(d).
Therefore, in light of an abundance of evidence in support of the lower court's determination, this court cannot agree with the appellants' argument that the lower court's order was an abuse of discretion. The determination of the lower court was supported by competent, credible evidence addressing the requisite factors necessary to grant an award of permanent custody. As such, the appellants' first assignment of error is not well taken.
The appellant, Allan Gump, presents an additional assignment of error separate and distinct from appellant Tracy Gump. His additional assignment of error states:
 II. The trial court committed reversible error by denying Wade Gump his constitutional right to counsel in violation of Juvenile Rule 4(A) of the Ohio Rules of Juvenile Procedure and 2151.28.1(H) of the Ohio Revised Code where such appointment was necessary due to a conflict which arose between the roles of the guardian ad litem and attorney representing Wade Gump.
The appellant bases his second assignment of error on the fact that Wade did not receive separate and independent counsel.[4] The appointment of separate individuals to serve as guardian ad litem and counsel for a child is only required if either the guardian ad litem or the trial court determines that a conflict exists between the role of guardian ad litem and the role of an attorney. Juv.R. 4(C)(2). Under the plain language of R.C. 2151.352, indigent children are entitled to appointed counsel in all juvenile court proceedings. State ex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44, 48. Generally, when an attorney is appointed as guardian ad litem, that attorney may also act as counsel for the child, absent a conflict of interest. R.C. 2151.281(H); In re Smith (1991), 77 Ohio App.3d 1, 14.
Here, appellant Allan Gump has presented no evidence which would lead this court to believe that a conflict existed between Attorney Lavelle's performance as the children's guardian ad litem and attorney. The appellant argues that Wade wished to remain with his mother, but Attorney Lavelle recommended that it was in the best interest of the children for permanent custody to be granted to CCDCFS. This argument is a clear misrepresentation of the evidence proffered at the lower court.
Granted, the testimony revealed that there were some earlier conversations with the children in which they indicated an interest in the possibility of living with their maternal grandfather, but the evidence reflected that the maternal grandfather did not have the resources to care for the children. Additionally, the CCDCFS social worker, Kirsten Dibbern, testified that the children did not want to live with their maternal grandfather and that they both desired to continue living with their foster mother. This statement was further supported by the report of Attorney Lavelle, which was prepared just days before the custody hearing.
There is simply no indication to support the conclusion that a conflict existed between the recommendation of the guardian ad litem and the wishes of the children. As such, the appellant's second assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., CONCURS. COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY.
[1] Appellant Tracy Gump is the mother of both minor children. Appellant Allan Gump is the biological father of the minor child Wade. William Shepherd is the biological father of the minor child Michael. The whereabouts of William Shepherd were unknown at the time of trial. For the purposes of appeal, Appellant Allan Gump is only contesting the disposition as to the minor child Wade.
[2] From September 2000 through January 2001, appellant Allan Gump was incarcerated pursuant to his child endangering conviction.
[3] Both appellants assert the same first assignment of error. Appellant Allan Gump's appeal related only to minor child Wade since he has no standing to challenge the trial court's decision as it relates to minor child Michael. See In re Guardianship of Love (1969),19 Ohio St.2d 111, 113.
[4] Attorney Patrick Lavelle served as both the guardian ad litem and counsel for the minor child, Wade.