OPINION
{¶ 1} Appellant-mother Melissa Green and appellant-father Christian Kerschbaumer appeal the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of the couples four minor children to the appellee, Tuscarawas County Jobs and Family Services ("TCJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant-mother Melissa Green is the natural mother of the four minor children subject to the within action. The four children are: Macaila Green, D.O.B. 090-9-94; Cordell Green, D.O.B. 03-13-00; Nemo Huebner, D.O.B. 09-21-01; and Zander Huebner, D.O.B. 07-18-02. Appellant-father Christian Kerschbaumer is the father of the youngest three children. The father of the oldest child, Craig Kaedel, is deceased.
 {¶ 3} TCJFS's involvement with the Green/Huebner children began in October, 2003. All four children were removed from the care and custody of appellants in Case No. 04JN00554. The action which prompted the removal of the children from the home of the appellants was an allegation that the appellant-father inflicted physical abuse on Cordell Green, striking him several times in the back with a wooden back scratcher, leaving marks and bruises on the child. Additionally in that case appellant-father made threats of physical violence against personnel of TCJFS and the New Philadelphia Police Department. Based upon those allegations as well as appellant-mother's failure to take appropriate steps to protect her children, TCJFS was granted temporary custody of the children in the prior case.
 {¶ 4} TCJFS provided appellants with a comprehensive reunification plan in Case No. 03JN00554. Appellant-mother substantially completed all portions of the court-ordered case plan, including separating herself from the appellant-father. Appellant-mother was advised numerous times by the court, her case manager, and the Guardian Ad Litem that continuing to have a relationship with the appellant-father or allowing him to have access to her children would result in the removal of the children from her home. Appellant-father failed substantially to engage in case plan services. Although he engaged in parent education, he failed to engage in anger management, to complete an anger management assessment, or necessary counseling. Additionally, appellant-father's contact with his children was terminated during the middle of the first dependency/neglect case, because he continued to utilize corporal punishment on his children during supervised visits, despite being advised that doing so was inappropriate and against agency policy. Case No. 04JN00554 was terminated in May, 2005. Custody of all four children was returned to appellant-mother in March, 2005 with protective supervision terminating two months later.
 {¶ 5} In September, 2004, TCJFS received information the children were being exposed to appellant-father. Those reports coincided with reports of concern from personnel at the New Philadelphia schools that Macaila Green was appearing for school in sexually suggestive clothing, as well as engaging in sexually suggestive behavior on the playground at the elementary school she attended. TCJFS verified that the children were being exposed to appellant-father. Based upon that information, TCJFS obtained an ex parte order directing removal of the children on September 24, 2004. The agency then obtained temporary custody of the children and filed a complaint for permanent custody in Case No. 04JN00625.
 {¶ 6} An adjudacatory hearing was held November 23, 2004. Pursuant to a judgment entry filed December 6, 2004, the trial judge found the subject children to be neglected and dependent. The matter was set for a dispositional hearing on December 14, 2004.
 {¶ 7} At the dispositional proceeding, the court took testimony from Barbara Schwartz, who provided phychological evaluations of Macaila Green, as well as evaluations of the appellant-mother and appellant-father. Testimony from Ms. Schwartz detailed numerous concerns regarding behavioral problems for Macaila Green, as well as phychological problems with appellant-mother and appellant-father. Although Ms. Schwartz did not make specific recommendations concerning the agency's permanent custody request, she did express serious concerns of the ability of the children to be reunified to the home of the parents, indicating that appellant-mother would require upwards of one year of intensive therapy before it would be safe to return the children to her home. Additionally, Beth Bertini, the case manager from TCJFS testified regarding her on-going work with the family for two separate cases. Ms. Bertini testified that she repeatedly informed appellant-mother that contact with appellant-father was not to be allowed. Ms. Bertini testified that the children's best interest would be served by a grant of permanent custody.
 {¶ 8} Although the children were returned to appellant-mother under the prior case in May of 2004, Macaila continued in counseling with Counselor Stephanie Milleman, of Personal and Family Counseling Services in New Philadelphia, Ohio. Macaila was in counseling with Ms. Milleman at the end of September, 2004 at the time of her removal in the case at bar. Ms. Mileman did not have any concerns with respect to Macaila being an abused/or dependent child during the time she was counseling her. Ms. Milleman counseled with Macaila for three months in individual sessions and in family sessions with appellant-mother and the other three children through the home-based therapy counseling program.
 {¶ 9} Pursuant to a judgment entry filed January 3, 2005, the trial judge granted TCJFS's request for permanent custody of all four children.
 {¶ 10} It is from that judgment entry that appellant-mother and appellant-father have timely appealed to this court. Appellant-mother raises the following three assignments of error for our consideration:
 {¶ 11} "I. The trial court erred in awarding permanent Custody to job and family services; as job and family services failed to prove by clear and convincing evidence that a grant of permanent Custody was in the best interests of the children and that the children could not or should not be placed with the mother within a reasonable period of time; and the decision was against the manifest weight and sufficiency of the evidence.
 {¶ 12} "II. The juvenile court erred in granting permanent custody as there were no reasonable efforts made by job and family services to prevent the need for placement and/or to make it possible for the children to be placed in the Custody of their mother/appellant.
 {¶ 13} "III. The trial court erred in granting permanent custody when the guardian ad litem's report failed to express the wishes of the children."
 {¶ 14} Appellant-father has raised the following two assignments of error for our consideration:
 {¶ 15} "I. The trial court erred in determining that the tuscarawas county job and family services made reasonable efforts to reunite appellant kerschbaumer with his children pursuant to revised code 2151.419 (a)(1).
 {¶ 16} "II. The trial court's ruling that Macaila and Cordell Green and Nemo and Zander Heubner are dependent and neglected children is against the manifest weight of the evidence."
 {¶ 17} There are two means by which an authorized agency may obtain permanent custody of a child under Ohio Law. The agency may either request permanent custody as part of its original abuse, neglect, or dependency complaint, or it may first obtain temporary custody and then subsequently file a motion for permanent custody. R.C. 2151.413 and R.C. 2151.27(C), see, also, In re Massengill (1991), 76 Ohio App.3d 220, 601 N.E.2d 206,208; In re Ward (Aug. 2, 2000), 4th Dist. No. 99 CA 2677. In this case, the TCJFS sought permanent custody in its complaint of September 27, 2004.
 {¶ 18} R.C. 2151.414(B) governs granting of permanent custody. In order to grant permanent custody as the initial dispositional order, the court must determine that the permanent commitment is in the best interest of the child under R.C. 2151.414(D) and that the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent under R.C. 2151.414(E).
 {¶ 19} R.C. 2151.414 (D) sets forth the factors a trial court should look to in determining the best interest of the child. The factors are:
 {¶ 18} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 19} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 20} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 21} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 22} "(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child.
 {¶ 23} R.C. 2151.414 (E) sets forth various factors the court must use in determining by clear and convincing evidence the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E). Those factors include, inter alia, that despite reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that caused the child to be removed from the home, the parent has failed continuously and repeatedly to substantially remedy the conditions. The court should consider whether the parent used medical, psychiatric, psychological, and other social and rehabilitative services and resources made available to the parent for the purpose of changing the parental conduct. Another factor is whether chronic mental illness, emotional illness, or mental retardation, physical disability, or chemical dependency is so severe it makes the parent unable to provide an adequate permanent home for the child at the present time and within one year after the court holds the hearing on the request for permanent custody.
 {¶ 24} The right to raise a child is an essential basic civil right,In Re: Hayes (1997), 79 Ohio St. 3d 46. Courts have described the permanent termination of parental rights as the family law equivalent of the death penalty in a criminal case, see, e.g., In Re: Smith (1991),77 Ohio App. 3d 1. Thus, a trial court should not terminate parental rights unless there is clear and convincing evidence presented that it is in the child's best interest.
 {¶ 25} Clear and convincing evidence is defined as the "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief of conviction as to the allegations sought to be established."State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St. 2d 279. Even where the burden of proof is "clear and convincing", an appellate court will not reverse the decision of a lower court if it is supported by "some competent, credible evidence." Id. at 74, 564 N.E.2d 54.
 {¶ 26} R.C. 2151.414 is written broadly, and the trial court is not limited to the factors listed in the statute, but must make a fully informed decision, In Re: Awkal (1985), 95 Ohio App. 3d 309. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record. Miller v. Miller (1988), 37 Ohio St. 3d 71.
 I. {¶ 27} In her First Assignment of Error appellant-mother argues that the trial court's findings that the children could not or should not be placed with the mother within a reasonable time and that the grant of permanent custody was in the children's' best interest were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 28} The trial court made findings of fact regarding whether the children can be placed or should be placed with either parent at this time or in the foreseeable future, and findings regarding the best interest of the children. The court also made conclusions of law in its judgment entry.
 {¶ 29} The trial court found that the four children were the subject of a previous dependency/neglect case in 2003 JN 00554. In that case, Cordell was found to be an abused child because he had been struck by his father with a backscratcher. The other three children were found to be dependant.
 {¶ 30} In May 2004, appellant-mother had done well with her case plan and the children were returned to her custody when it appeared that her relationship with appellant-father had ended. In October 2004 it became apparent that appellant-mother and appellant-father had re-established their relationship and appellant-mother was permitting appellant-father to have access to the children. All four children were subsequently placed in temporary custody of TCJFS.
 {¶ 31} Psychological evaluations were conducted for the parents that revealed complex issues of sexual abuse, neglect and family dysfunction in the background of both parents. The testing further indicated that appellant-mother is suffering from Major Depression and Dependant Personality Disorder. She continues to feel victimized and does not take any responsibility for her circumstances. Finally, the testing indicates that appellant-mother lacks insight into her own behavior and was very defensive of her relationship with appellant-father. Appellant-mother continually minimized the risk that appellant-father represents to their children and defended his past behavior.
 {¶ 32} In spite of the treatment and conclusion of the prior case, the trial court found that it does not appear that appellant-mother has made any lasting progress that would demonstrate her ability to safely parent the children. The trial court also found that the oldest child demonstrates behavior that indicates inappropriate sexual behavior and pseudo-maturity manifested by much parentified behavior.
 {¶ 33} Finally, the trial court found that the mental health prognosis for the parents is very guarded at best. Only long term dedication to therapy and change will bring about any positive changes in either parent. Neither parent has acknowledged his or her own responsibility for the removal of the children, nor have they demonstrated any commitment to solve the problems.
 {¶ 34} From these findings of fact the trial court concluded by clear and convincing evidence the minor children cannot and/or should not be placed with either parent at this time or in the foreseeable future. The court found the parents had committed actions showing an unwillingness to provide a safe environment and an adequate permanent home for the children.
 {¶ 35} Appellant-mother argues that the trial court erred because the decision to grant permanent custody to TCJFS was in conflict with evidence presented at trial. She bases her opinion on the testimony of Stephanie Milleman, the individual counselor for the oldest child and who was also involved in home based therapy with the appellant-mother, and additionally on the report of the children's guardian ad litem.
 {¶ 36} In her report, the guardian ad litem made the following conclusion and recommendation: "I believe [appellant-mother] loves her children very much. Unfortunately, she elected to place [appellant-father's] needs before the children's needs. I have concerns that if the children are returned in the near future, before [appellant-mother] can complete extensive counseling, we will be back in Court, removing the children again. At this time, I do not believe that either Macaila or Cordell should be retuned home. I believe they have experienced great trauma because they have not been protected. However, I believe that Nemo and Zander have a greater potential for success in [appellant-mother's] home if she receives appropriate, adequate treatment."
 {¶ 37} Stephanie Milleman testified that appellant-mother was meeting the basic needs of the children and that the oldest child was making progress. Ms. Mileman would not recommend permanent custody be granted.
 {¶ 38} The evidence demonstrated the successful efforts appellant-mother had made in the previous case to regain custody of her children. Even so, the relevant issue is whether the children can be placed or should be placed with their parents within a reasonable time. R.C. 2151.414(B) (1). On that point, the evidence demonstrates that the improvement the appellant-mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. Appellant-mother's ability to protect the children to which Barbara Schwartz testified was conditioned on her ability to become independent of appellant-father and accept accountability and an understanding of the issues leading to the removal of the children from the home. The character of that evidence, and the fact that the trial court was in a position to make the required assessments first hand, with the parties and witnesses before it, leads us to conclude that the trial court's findings should not be disturbed.
 {¶ 39} The trial court also made findings of fact and conclusions of law with regard to the best interest of the child. The trial court considered the factors listed in R.C. 2151.414 and determined that it was in the best interest of the children to be placed in permanent custody of TCDJFS.
 {¶ 40} "The fact [that] the trial court did not specifically mention each of the factors listed in R.C. 2151.414(D) does not mean the trial court did not consider such factors. In the absence of demonstrable evidence to the contrary, and given the presumption of regularity, we find that the trial court did consider each of the relevant statutory factors. This position is bolstered by the trial court's specific recitation [that] the statutory factors were considered." In re SchupbachChildren (July 6, 2000), Tuscarawas App. 2000AP010005, 2000 WL 964981.
 {¶ 41} The findings show that the trial court gave considerable discussion to the evidence in question, but ultimately concluded that appellant-mother's fitness to care for and protect her children had not improved. It is not the duty of this court to reweigh the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276. The trial court is in the best position to determine the credibility of proffered testimony.
 {¶ 42} After examining the record, we find no abuse of discretion on the part of the trial court. Additionally, we find that there was clear and convincing evidence that supports the trial court's decision that granting permanent custody to TCJFS is in the children's best interests.
 {¶ 43} Our review of the record reveals evidence was presented on relevant factors that R.C. 2151.414(D) requires the court to consider. There also was testimony that Macaila has concerns about returning to live with her biological parents. Further there was testimony about the children's need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to TCJFS.
 {¶ 44} Because the award was based upon a substantial amount of credible and competent evidence, we must defer to the trial court's factual determination that it was appropriate for TCJFS to receive permanent custody of the children.
 {¶ 45} Accordingly, appellant-mother's First Assignment of Error is overruled.
 II. {¶ 46} Appellant-mother's Second Assignment of Error and Appellant-father's First Assignment of Error are identical. Each party argues, in essence, that the trial court erred in finding that TCJFS made reasonable efforts to prevent the children's removal from the home and also in finding that TCJFS made reasonable efforts to reunify the children with their parents. We disagree.
 {¶ 47} In the case sub judice, TCJFS filed an original custody complaint pursuant to R.C. 2151.353(A) (4). In In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, 17 OBR 469, 479 N.E.2d 257, paragraph two of the syllabus, the Ohio Supreme Court held: "R.C. 2151.412 does not require a juvenile court to order a reunification plan when it makes a dispositional order pursuant to R.C. 2151.353(A)(4)." In In re DemetriusH. (Mar. 9, 2001), Lucas App. No. L-00-1300, 2001 WL 227053, the court stated:
 {¶ 48} "While the trial court did make this finding, it is well-established that where a children services agency seeks original permanent custody of a child pursuant to R.C. 2151.353(A) (4), the agency is not required to establish a case plan. See In the Matter of Misty B.
(Sept. 17, 1999), Lucas App. No. L-98-1431; In the Matter of StephanieH. (Sept. 17, 1999), Huron App. No. H-99-009". See also, In re Doe (2002), 149 Ohio App.3d 717, 736, 2002-Ohio-4470 at ¶ 83,778 N.E.2d 1053, 1068.
 {¶ 49} However, subsequent to the Ohio Supreme Court's decision in Inre Baby Girl Baxter, supra, R.C. 2151.419(A)(1) was enacted, which provides, in relevant part, that: "* * * at any hearing held pursuant to section * * * 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case removed the child from the home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount."
 {¶ 50} Upon a review of the trial court record in the case at bar, we conclude that the record demonstrates TCJFS made reasonable efforts to prevent the removal of the children from the home. TCJFS developed a case plan to reunify appellants and the children in the previous case. TCJFS provided appellant-mother with a case plan which required appellant-mother to protect the children from appellant-father. No sooner had she completed that case plan, appellant-mother re-established a relationship with appellant-father. Appellant-mother made no attempt to contact TCJFS for assistance or guidance. The psychological testimony as well as the testimony relative to the children with respect to appellant-mother is set forth in our disposition of appellant-mother's Assignment of Error I, supra, and need not be repeated here.
 {¶ 51} Turning now to the appellant-father the trial court found that in the previous case appellant-father was the perpetrator of violence against Cordell; appellant-father failed to participate in any case plan services and refused to alleviate any concerns regarding his own behavior; appellant-father continued to attempt to physically discipline his children during supervised visits and when instructed he could not use physical disciple, he became angry, vulgar and indicated to the caseworker he would discipline his children as he saw fit. The record further establishes that the psychological testing of appellant-father was barely valid as he attempted to manipulate the test results; he has admitted to repeated use of drugs; and that his behavior fits the profile of an aggressive partner in an abusive relationship. Appellant-father is also on probation for menacing a caseworker relative to the case at bar. Appellant-father made no attempt to contact TCJFS after custody was returned to the appellant-mother in the previous case to complete his portion of the case plan. Instead he suggests that he be permitted to ignore his court ordered obligations under that case plan and return to the home with relative impunity because custody had been returned to the appellant-mother and the prior case closed. If we were to accept this argument we would be granting a license that would allow any party to completely ignore his or her court ordered responsibilities and return to living with the party who successfully completes his or her requirements.
 {¶ 52} R.C. 2151.414(E) (15) provides that a finding that a child cannot or should not be reunified with the parents is to be made if the trial court determines that the seriousness or nature of the abuse or neglect makes placement with the parents a threat to the child's safety.
 {¶ 53} Based upon the foregoing, we find that the trial court reasonably concluded that TCJFS did exercise reasonable efforts to reunify the children with the appellant-father and appellant-mother and any further attempts would be futile.
 {¶ 54} Accordingly, appellant-mother's Second Assignment of Error and appellant-father's First Assignment of Error are overruled.
 III. {¶ 55} In her Third Assignment of Error appellant-mother contends that the trial court committed prejudicial error when it failed to consider the wishes of the children. We disagree.
 {¶ 56} Revised Code 2151.414(D) (2) requires the trial court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child" when the trial court determines the best interest of a child.
 {¶ 57} In this case, the trial court stated that it had considered all of the factors listed in R.C. 2151.414, in reaching its conclusion that it was in the children's best interests for permanent custody to be granted to the agency. Thus, the trial court stated that it considered the wishes of the children with due regard to their maturity and as expressed by the guardian ad litem. The record establishes that three of the children are age five (5) years old or less. There is nothing in the record to suggest that these children are capable of expressing or verbalizing their wishes. Certainly there is no prejudicial error under these circumstances. In re Sanders Children, 5th Dist. No. 2004 AP 08 0057, 2004-Ohio-5878 at ¶ 67.
 {¶ 58} Appellant-mother's reliance upon our decision in the case of Inre Miller (Feb. 24, 2005), 5th Dist No. 04 CA 32 is misplaced. In that case, the trial court record contained no evidence concerning the wishes of the child. In contrast, the trial court record in the case at bar, contains clear evidence as to the wishes of the oldest child. The testimony of Barbara Schwartz indicated the child did not wish to return to her parents. (T. at 149). The ongoing case manager Beth Bertini agreed that in her conversations with the oldest child the child expressed wishes that she not return home. (Id. at 64-65; 234).
 {¶ 59} Under these circumstances we find no prejudicial error.
 {¶ 60} Appellant-mother's Third Assignment of Error is overruled.
 IV. {¶ 61} At the outset we note that App.R. 4(B) (5) permit's a parent to appeal from an adjudicatory ruling either at the time that ruling was madeor in the appeal of the final dispositional order. In re A.C.,160 Ohio App.3d 457, 2005-Ohio-1742; In re S.G. M.G., Cuyahoga App. No. 84228, 2005-Ohio-1163 at ¶ 13. See, also, In re Asia Fordyce (Sept. 22, 1997), Butler App. No. CA96-09-193, at * 10.
 {¶ 62} In the case at bar, therefore, the appellant-father could appeal from the ruling in the adjudicatory hearing either after that hearing or after the case was disposed of by the dispositional hearing.
 {¶ 63} In his Second Assignment of Error, appellant-father urges the State failed to prove by clear and convincing evidence the children were either dependant or neglected. We disagree.
 {¶ 64} As appellee correctly states, a judgment which is supported by competent and credible evidence going to each essential element of the case shall not be reversed by this court as being against the manifest weight of the evidence, C.E. Morris Company v. Foley ConstructionCompany (1978), 54 Ohio St. 2d 279. In addition, the trial court must respect each parent's interest separately and find that each parent is incapable of providing the requisite degree of care. In re PieperChildren (1991), 74 Ohio App.3d 714, 722.
 {¶ 65} As statutorily defined, a neglected child includes one who "lacks adequate parental care because of the faults or habits of the child's parents, guardian or custodian," or whose parent, guardian or custodian "neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being." R.C.2151.03(2) and (3). A dependent child is one who "lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian," or "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04((B) and (C).
 {¶ 66} The trial court found specifically that appellant-father had failed to remedy the conditions that had resulted in the children being placed outside the home in the original case. The trial court determined that appellant-father had "failed to participate in any case plan services and refused to alleviate any of the concerns regarding his own behavior. He attempts to physically discipline the children during his supervised visits. When he is instructed that he could not do so, he became angry, directed vulgarity towards the caseworker, and said he would discipline his children as he saw fit." There was clearly evidence to support this determination. Further, the trial court found that appellant-father was the perpetrator of violence against Cordell in the previous case.
 {¶ 67} It necessarily follows that the finding concerning appellant-father is that he had demonstrated a lack of commitment to his children by his refusal to address his problems and the deficits in his parenting skills.
 {¶ 68} Having reviewed the record, we are convinced that it contains clear and convincing evidence to support the juvenile court's decision that the children were neglected and dependent.
 {¶ 69} Accordingly, appellant-father's Second Assignment of Error is overruled.
 {¶ 70} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellant.